**Garth YEAGER, Plaintiff,**

v.

**TRW INC., Defendant.**

**No. 3:95–CV–49.**

United States District Court,
E.D. Texas,
Paris Division.

Oct. 29, 1997.

James Ray Rodgers, Moore Payne Clem Rodgers & Hodgkiss, Paris, TX, for Plaintiff.

Bart Allan McKay, Jones Day Reavis & Pogue, Dallas, TX, Carol A. Ahern, Carol A. Ahern, Jones Day Reavis & Pogue, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT*

SCHELL, District Judge.

This matter is before the court on Defendant TRW Inc.'s ("TRW") Second Motion for Summary Judgment filed on August 29, 1997. Plaintiff Garth Yeager ("Yeager") filed a response on September 15, 1997. Defendant filed a reply on September 18, 1997. Upon consideration of the motion, response, reply, and applicable law, the court is of the opinion that Defendant's second motion for summary judgment should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. *Procedural Background*

On January 9, 1997, the Honorable William Wayne Justice granted Defendant's first motion for summary judgment, with respect to Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681u. *See* Order of January 9, 1997, 961 F.Supp. 161 (Justice, J.) ("Order"). In that order, Judge Justice ("the court") held that summary judgment was appropriate as a matter of law as to all of Plaintiff's FCRA causes of action because the Act is only applicable to reports made for consumer purposes, and Plaintiff's credit reports in this case were issued solely for business purposes. *Id.* at 162–163. In addition to granting summary judgment, the court granted Plaintiff leave to file a Second Amended Complaint so that Plaintiff could assert any non-FCRA claims and the court's jurisdictional basis. *Id.* at 162–163.

Plaintiff subsequently filed a Second Amended Complaint asserting four state law claims as well as two additional actions under the FCRA. Plf.'s Second Am. Compl. at 1–8. Defendant then filed a Motion to Dismiss for Failure to State a Claim that addressed Plaintiff's state law claims and newly-pled FCRA claims. The court found it unnecessary to address the merits of Plaintiff's FCRA claims, since the previous order dismissed all such claims. Order of March 27, 1997, at 3, 4 (Schell, J.); *see also* Order of January 9, 1997 (Justice, J.). The court did find, however, that Plaintiff had adequately set out the basis necessary to state a claim concerning his state law causes of action. *Id.* at 5. These claims include defamation, invasion of privacy, negligence, and tortious in-

terference with prospective contractual relations. Plf.'s Second Am. Compl. at 5–8.

## B. Factual Background

The focus of Yeager's causes of action in this case centers around the alleged publication of four credit reports by TRW to lenders with whom Yeager had applied for credit. Br. in Resp. to Def.'s Second Mot. for Summ. J. at 2. Specifically, Yeager contends that TRW dispensed inaccurate and derogatory information via credit reports published on the following dates:

| Alleged Publication Date: | Recipient of Report |
| --- | --- |
| September 6, 1994 | Agricredit Acceptance Corporation |
| September 12, 1994 | First National Leasing |
| September 22, 1994 | Steams Financial Corporation |
| April 4, 1995 | Colonial Bank of Greenville |

*Id.* As a result of these alleged publications, Yeager contends that each of the above lenders denied him credit which he would have otherwise obtained. *Id.*

Apparently, a civil judgment in Dallas County was incorrectly listed in the credit reports. Yeager alleges that he first became aware of this information on September 21, 1994, after being denied credit by First National Leasing Company. Br. in Resp. to Def.'s Second Mot. for Summ. J., (Aff. of G. Yeager at 2). Later that same day, Plaintiff called TRW and requested a copy of his credit report by means of an automated answering service. *Id.* Yeager claims that he received a copy of the report on September 27, 1994, which contained the inaccurate information. Br. in Resp. to Def.'s Second Mot. for Summ. J., (Aff. of G. Yeager at 4). That same day, Yeager allegedly called TRW again and informed a representative of the company that the information on his report was inaccurate and requested that it be reexamined. *Id.* The representative allegedly informed Mr. Yeager that the process would take approximately 30 days. *Id.*

On October 21, 1994, after 24 days had expired, Yeager drove to Defendant's office in Allen, Texas to determine whether the incorrect information had been removed.

Br. in Resp. to Def.'s Second Mot. for Summ. J., (Aff. of G. Yeager at 5). Finding that the data had not been removed, Mr. Yeager spoke with TRW representative Sharlene Pumphrey and informed her of the inaccuracy. *Id.* Yeager claims that Ms. Pumphrey acknowledged that no Dallas County, Texas judgment existed against him, but indicated that she needed to further investigate the matter. *Id.* Ms. Pumphrey then ordered a consumer dispute verification form ("CDV") to facilitate further investigation of Yeager's file. Br. in Supp. of Def.'s Second Mot. for Summ. J., Ex. 3 (Aff. of K. Currie at 2).[1] Plaintiff alleges that Ms. Pumphrey later notified him that her own investigation showed no Dallas County judgment, but that it did show a judgment against Plaintiff in Delta County, Texas. Br. in Resp. to Def.'s Second Mot. for Summ. J., (Aff. of G. Yeager at 7). Plaintiff contends that he informed Ms. Pumphrey on November 10, 1994, that his own investigation in the Delta County records indicated that no such judgment existed. Br. in Resp. to Def.'s Second Mot. for Summ. J., (Aff. of G. Yeager at 8). Plaintiff maintains that Ms. Pumphrey told him at that time that she had already done more than she should have, and advised Mr. Yeager to employ a lawyer if he wanted more information. *Id.*

---

1. Defendant contends that a CDV form is a standard industry procedure used to verify consumer disputes. Br. in Supp. of Plf.'s Mot. for Summ. J. at 15. Through this process, Defendant asserts that it sends standardized questionnaires to the sources of information contained in TRW's files. *Id.* at Ex. 3 (Aff. of K. Currie at 2) These sources then respond by verifying or correcting the disputed information. *Id.* Defendant maintains that the CDV form is administered through a separate department and Ms. Pumphrey had no knowledge of their findings concerning this matter. *Id.*, Ex. 3 (Aff. of K. Currie at 3).

TRW claims that the CDV form ordered by Ms. Pumphrey was completed on November 16, 1994. Br. in Supp. of Def.'s Second Mot. for Summ. J., Ex. 3 (Aff. of K. Currie at 3). It is undisputed that this form indicated that the information on Mr. Yeager's report was incorrect and deserved to be removed. It is further undisputed that Colonial Bank of Greenville received a credit report from TRW on April 4, 1995, which contained the incorrect reference to a civil judgment against the Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See Id.* at 247, 106 S.Ct. at 2509–10. Because Plaintiff bears the burden of proof at trial on the causes of action presented, Defendant is not required to produce evidence negating the existence of a material fact; rather Defendant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If Defendant's motion demonstrates such an absence of evidence, "the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.) (citation and internal quotations omitted), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The evidence of the nonmovant is to be believed, however, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.*

## III. DISCUSSION

Defendant moves for summary judgment on two grounds. Def.'s Second Mot. for Summ. J. at 1, 2. First, Defendant asserts that federal law entitles it to qualified immunity from each of the four state law causes of action asserted by Plaintiff. *Id.* at 1. Defendant contends that, in order to overcome this qualified immunity, Plaintiff must establish that TRW acted with malice or willful intent to injure him on each occasion that it published an allegedly inaccurate report. Br. in Supp. of Def.'s Mot. for Summ. J. at 6. Second, Defendant asserts that there is no admissible evidence that three of the four lenders ever received a derogatory credit report issued by TRW, or that the information, even if received, formed the basis for the denial of credit. Def.'s Second Mot. for Summ. J. at 1, 2. As to the fourth lender, Defendant maintains that no evidence exists as to whether the lender would have granted Plaintiff credit but for the TRW report, and as a result, summary judgment is appropriate. *Id.* at 2.

### A. Qualified Immunity

#### 1. Applicable Law

The FCRA creates a regularized system for investigation and disclosure of consumer credit reports. It grants rights in consumers and imposes obligations on consumer reporting agencies. The Act also establishes civil

liability for negligent or willful violation of any of its requirements. 15 U.S.C. §§ 1681n and 1681o. In addition, the FCRA allows for state common law causes of action. *Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 32 (5th Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974). The Act limits common law liability, however, by giving credit agencies and others qualified immunity for actions based on information disclosed pursuant to the Act. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

■ Specifically, section 1681h(e) of the Act states that no consumer may bring a cause of action "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency" which is based upon information that the agency is required to disclose in accordance with the Act, "except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). As a result, if the information giving rise to the cause of action was obtained pursuant to the requirements of the Act, then the complainant's claims must rise to the level of malice or willful intent to injure before such a cause of action is allowed. *Thornton*, 619 F.2d at 703. "It is clear that the qualified immunity provided for by the FCRA is meant by Congress to be the 'quid pro quo for full disclosure.'" *Thornton*, 619 F.2d at 703 (quoting *Retail Credit Co. v. Dade County*, 393 F.Supp. 577, 584 (S.D.Fla.1975)).

### 2. Applicability of Qualified Immunity to Plaintiff's Common Law Claims

The threshold determination for the application of qualified immunity in the present case is whether the common law causes of action alleged by Mr. Yeager are "in the nature of" a defamation, invasion of privacy, or negligence claim. As previously stated, Yeager has alleged four common law claims: defamation, invasion of privacy, negligence, and tortious interference with prospective contractual relations. Plf.'s Second Am. Compl. at 1–8. The first three of these claims are specifically mentioned within the statute and, therefore, clearly meet this threshold requirement. *See* 15 U.S.C. § 1681h(e).

■ A claim for tortious interference with prospective contractual relations requires that a defendant act maliciously by intentionally preventing a contractual relationship from occurring with the purpose of harming the plaintiff. *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir.1983). Under this cause of action, a plaintiff must establish malice regardless of whether or not qualified immunity under section 1681h(e) applies. Therefore, the court finds it unnecessary to determine whether tortious interference with prospective contractual relations is "in the nature" of defamation, invasion of privacy, or negligence such that qualified immunity would apply.

■ Next, the court must determine whether the Defendant provided the information which forms the basis for Yeager's first three claims pursuant to the Act. Section 1681g of the FCRA requires that a "consumer reporting agency" disclose upon request of the consumer "the nature and substance of all information ... in its files on the consumer at the time of the request" as well as "the recipients of any consumer report on the consumer which it has furnished." *See Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 697 (10th Cir.1980). In the present case, it is undisputed that Yeager is a "consumer" and TRW is a "consumer reporting agency" as contemplated by the statute. Further, Yeager requested and was given all the information which TRW possessed regarding his credit history. Br. in Resp. to Def.'s Second Mot. for Summ. J., Ex. A. In addition, TRW gave Yeager a report containing the names of all the recipients of that information. *Id.*[2] Accordingly,

---

**2.** Although the information allegedly provided to potential creditors of the Plaintiff in this case was not considered a "consumer report" (Order Granting Def.'s Mot. Summ. J. at 3) (citing FTC Interpretation under the Fair Credit Reporting Act 16 C.F.R. Pt. 600, App. § 603 cmt. (6)(B)), this mandatory disclosure requirement extends to all information and is not just limited to consumer reports. *Heath*, 618 F.2d at 697 (citing *Rice v. Montgomery Ward & Co.*, 450 F.Supp. 668

the court finds that these disclosures were made pursuant to the Act. Therefore, qualified immunity extends to Plaintiff's defamation, invasion of privacy, and negligence causes of action.

### B. Applicable Standards

#### 1. The Qualified Immunity Standard

Qualified immunity attaches to Plaintiff's defamation, invasion of privacy, and negligence claims. Therefore, Plaintiff can only prevail on these claims by establishing that Defendant provided false information with "malice or willful intent to injure." Although the FCRA does not define the terms "malice" or "willful," courts have defined these terms while interpreting cases of similar stature. *See, e.g, Thornton v. Equifax,* 619 F.2d 700, 705 (8th Cir.1980), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980) (defining the term malice); *Wiggins v. Equifax Services, Inc.* 848 F.Supp. 213, 219 (D.D.C.1993) (citing *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993)).

■ Courts considering the term "malice" in this context have borrowed the definition provided by the Supreme Court in the area of libel litigation. *Thornton,* 619 F.2d at 705 (8th Cir.1980) (citing *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Specifically, an allegedly defamatory statement will be deemed to have been made with malice if made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quoting *New York Times,* 376 U.S. at 279–280, 84 S.Ct. at 726). Meanwhile, courts have interpreted the term "willful" in this context to require that a reporting agency "knowingly and intentionally [commit] an act in conscious disregard for the rights of others."[*] *Wiggins v. Equifax Services, Inc.* 848 F.Supp. 213, 219 (D.D.C.1993) (citing *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993)).

Plaintiff cites *Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex.1970), for the proposition that the standard for "malice"

sufficient to destroy qualified immunity may be established by a showing of "reckless disregard" or "conscious indifference" for the rights of the Plaintiff. Plf.'s Br. in Resp. to Def.'s Second Mot. for Summ. J. at 7. Nowhere in the court's definition of malice, however, do the words "conscious indifference" appear. *O'Neil,* 456 S.W.2d at 900. Moreover, the *O'Neil* court specifically stated that, "[t]he *New York Times* definition of actual malice which this Court applied in *El Paso Times* is likewise applicable in the instant case." *Id.*

#### 2. The Malicious Intent Standard

■ To recover on a tortious interference with prospective contractual relations claim under Texas law, a plaintiff must establish the following: "(1) there was a 'reasonable probability' that he would have entered into the contractual relationship; (2) defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming the plaintiff; (3) the defendant was not privileged or justified; and (4) actual harm or damage occurred as a result." *Verkin v. Melroy,* 699 F.2d 729, 732 (5th Cir.1983). In order to find the necessary intent under the second element, the defendant must have had knowledge of the prospective contractual relationship which he is accused of blocking. *Id.* at 733. The tortfeasor, however, need not know the identity of the prospective contractors. *Id.* Rather, he must only know that some party or parties had a prospective contractual relationship. *Id.* In addition, a plaintiff may prove malice sufficient to establish intent to harm through circumstantial evidence. *Id.*

### C. Analysis

#### 1. The First Three Publications

##### a. Defamation, Invasion of Privacy, and Negligence

■ The court must first address TRW's defense of qualified immunity for the three publications made in September 1994. Summary judgment in favor of a defendant credit

---

(M.D.N.C.1978)) (recognizing that not all requirements of the Act are limited to consumer reports); *see also Freeman v. Southern National*

*Bank,* 531 F.Supp. 94, 96 (S.D.Tex.1982) (applying qualified immunity where the court found no "consumer report").

reporting agency accused of publishing inaccurate data is proper if the defendant did not act with "malice or willful intent." *Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824 (E.D.N.Y.1994). Malice cannot be shown where there is no evidence which would indicate that the agency in question had notice of the inaccuracy in its report until after the report was published. *Whelan*, 862 F.Supp. at 833. There can be no question that the defendant lacked the requisite intent, when the defendant "was not even put on notice that its report contained inaccurate information until [a date after its original publication.]" *Whelan*, 862 F.Supp. at 833–34.

Here, the evidence establishes that TRW had no notice of any inaccuracies in its reports until September 27, 1994, when notified by Yeager. G. Yeager Dep. at 4. This date is five days after the last of the three alleged publications. Plf.'s Br. in Resp. to Def.'s Mot. for Summ. J. at 2. With no evidence which would indicate that TRW had notice of the potential inaccuracies, Yeager·cannot establish that TRW could have possibly been acting with malice or willful intent when it published the first three allegedly inaccurate reports. As a result, summary judgement is GRANTED as to Plaintiff's claims of defamation, invasion of privacy, and negligence as they relate to these first three publications.

*b. Tortious Interference with Prospective Contractual Relationships*

■ Yeager has provided evidence that TRW sent copies of the credit report to three different lenders during the month of September 1994. Br. in Resp. to Def.'s Mot. for Summ. J., Ex. A. Given the nature of TRW's business, a jury could reasonably infer that each lender requested the report to assist in its decision of whether to grant Yeager credit. Therefore, a reasonable jury could infer that TRW had knowledge of the prospective relationships between Yeager and the prospective lenders. Nevertheless, Yeager has failed to provide any evidence that TRW had knowledge of the falsity of its information prior to its publication. Without this knowledge, no reasonable jury could possibly infer

that Defendant published the false information with the intent of breaking up Plaintiff's prospective contracts for bank credit. Accordingly, summary judgement is also GRANTED as to Plaintiff's claim of tortious interference with prospective contractual relations regarding these first three publications.[3]

### 2. The Fourth Publication

*a. Defamation, Invasion of Privacy, and Negligence*

■ Plaintiff can overcome Defendant's qualified immunity by showing that TRW made the fourth publication with reckless disregard as to its truth or falsity. *Thornton v. Equifax*, 619 F.2d 700, 705 (8th Cir.1980) (citing *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Courts have defined "reckless disregard" as a "high degree of awareness of probable falsity." *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir.1987) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). Plaintiff can establish this high degree of awareness by showing that the Defendant entertained serious doubts as to the truth of its publication. *Id.* This inquiry focuses on the actual state of mind of the Defendant and can be shown through indirect or circumstantial evidence. *Id.*

■ Evaluating the facts of the present case in the light most favorable to the non-movant, Yeager has provided evidence from which a jury could infer the requisite degree of reckless disregard by TRW. Yeager alleges that he notified TRW on September 27, 1994, that its files incorrectly listed a civil judgment against him. TRW's representative acknowledged that she believed the files to be incorrect. As a result, she ordered a CDV form and took other steps to further investigate the situation. During the course of her own investigation, Ms. Pumphrey found that the original information was incorrect. However, she believed that the earlier data merely named the wrong county in which the civil judgment against Yeager ex-

---

3. In light of these findings, the court need not address Defendant's second ground for summary judgment as it relates to the first three alleged publications.

isted. Yeager performed his own search in the docket of the second county and again found no judgment. He then informed Ms. Pumphrey that the information was again incorrect. However, Ms. Pumphrey took no further action with regard to Yeager's file except to advise him to employ a lawyer if he wished to receive any additional information. The CDV investigation, originally ordered by Ms. Pumphrey, was completed approximately six days later. The results of this investigation indicated that the information in Yeager's file was incorrect and should be removed, yet it remained in the file and was published approximately four months later. These facts indicate that TRW had a degree of awareness as to the probable falsity of its information such that Yeager has successfully raised a fact issue upon which a reasonable jury could infer knowledge or reckless disregard.

### b. Tortious Interference with Prospective Contractual Relationships

It is undisputed that Defendant sent Colonial Bank of Greenville a copy of Plaintiff's credit report which contained inaccurate data. Given the nature of Defendant's business, a jury could reasonably infer that Colonial Bank requested the report to assist in its decision of whether to grant Plaintiff credit. Therefore, a reasonable jury could infer that Defendant had knowledge of the prospective relationship that it is accused of blocking.

The evidence also indicates that Yeager informed Ms. Pumphrey on two occasions that the information in his files was incorrect. Ms. Pumphrey's response to the second admonition, however, was to merely advise Yeager to employ a lawyer if he wanted any further information from TRW concerning the matter. Moreover, the CDV form which Ms. Pumphrey requested indicated that Yeager's file was incorrect, but the information nevertheless remained in Plaintiff's file until published again nearly four months later. Based on this evidence, Yeager has successfully raised a fact issue upon which a reasonable jury could also infer that Defendant acted maliciously by intentionally preventing Plaintiff's prospective contractual relationship from occurring.

### c. Causation

TRW next argues that Yeager has failed to provide admissible evidence which establishes a fact issue as to whether Colonial Bank of Greenville would have extended credit but for TRW's publication. Specifically, Defendant contends that the deposition testimony of Wayne Woodruff, an employee of Alliance Bank, fails to state with certainty that Colonial Bank of Greenville would have granted credit to Plaintiff if Defendant had not published its inaccurate report. Br. in Supp. of Def.'s Second Mot. for Summ. J. at 16.

TRW notes that Mr. Woodruff is an employee of Alliance Bank, which acquired the now extinct Colonial Bank of Greenville in April 1996. *Id.* Ex. 7 at 2. Mr. Woodruff was never employed with Colonial Bank of Greenville and could not testify as to its specific lending policies. *Id.* Ex. 7 at 5. Mr. Woodruff did testify, however, that at the time of the deposition he had acquired 30 years experience in the banking industry. *Id.* Based on this experience, Mr. Woodruff believed that without the incorrect data published by TRW, Colonial Bank of Greenville may have granted Mr. Yeager's loan request. *Id.* Ex. 7 at 4–5.

TRW's argument focuses on Yeager's inability to establish with certainty that he would have received a loan from Colonial Bank of Greenville if his report had not contained the inaccurate information. Yeager's burden at the summary judgment stage, however, is not to establish causation with certainty. Rather, he need only establish a genuine issue as to the material fact. FED. R.CIV.P. 56(c). In this instance, Yeager has brought forth testimony from an individual with 30 years of banking experience which indicates that without Defendant's inaccurate data, Yeager might have received the requested loan. Given this evidence, a reasonable jury could return a verdict in Plaintiff's favor on this issue.

The court finds that Plaintiff has established a genuine issue as to the material facts presented by Defendant. Therefore, TRW's Motion for Summary Judgment is DENIED as to all of Plaintiff's claims regarding the

publication of Plaintiff's credit report to Colonial Bank of Greenville on April 4, 1995.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment as to those claims based on the publications made on September 6, 1994, September 12, 1994, and September 22, 1994, and DENIES Defendant's Motion for Summary Judgment as to those claims based on Defendant's publication of the credit report on April 4, 1995.