Kerry L. SPENCER

v.

HENDERSEN–WEBB, INC., Robert L. Kilberg, Zimlin & Kilberg, Rupp & Associates, Inc., and Frances Flores

No. Y–98–3649.

United States District Court, D. Maryland.

Dec. 16, 1999.

---

J. Steven Lovejoy, Towson, MD, and David R. Breschi, Towson, MD, for Plaintiff.

Jerrold A. Thrope, Baltimore, MD, Lawrence S. Greenwald, Baltimore, MD, and Kristine A. Crosswhite, Baltimore, MD, for Defendant Hendersen–Webb, Inc.

Mary Malloy Dimaio, Towson, MD, for Defendants Rupp and Associates, Inc., Frances Flores, Robert Kilberg, and Zimlin & Kilberg.

## Memorandum Opinion

JOSEPH H. YOUNG, Senior District Judge.

### I.

This case is before the Court on cross-motions for summary judgment. The Plaintiff, Kerry L. Spencer ["Spencer"], filed a complaint in the Circuit Court for Baltimore City on September 25, 1998, alleging that Hendersen–Webb, Inc. ["Hendersen"] defamed her credit and violated the Maryland Consumer Debt Collection Act ["MCDCA"], and Robert L. Kilberg ["Kilberg"], Zimlin & Kilberg, Rupp and Associates ["Rupp"], and Frances Flores ["Flores"] defamed her credit and violated various provisions of the Federal Fair Debt Collection Practices Act ["FDCPA"] and the MCDCA in their efforts to collect a debt arising from a residential lease. The case was removed to this Court in October 1998. Defendants' Motions to Dismiss were denied by marginal order on December 7, 1998. After discovery, Spencer filed a motion on August 23, 1999, seeking summary judgment on her statutory claims. The Defendants filed oppositions and cross-motions for summary judgment. Hendersen moved for summary judgment on Spencer's MCDCA and defamation claims and the other Defendants moved for summary judgment on Spencer's defamation claims.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of the non-movant's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The non-movant's evidence, however, is to be believed and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255, 106 S.Ct. 2505.

## II. FACTUAL BACKGROUND

On May 28, 1993, Spencer and William T. Taylor ["Taylor"] signed a contract to rent 10212H Sunnylake Place for one year, beginning July 1, 1993, at $504 per month. The lease was signed by Taylor, Spencer, and a representative of Hendersen–Webb, Inc., as Agent for the owner, Lakecrest Apartments Limited Partnership.

The events surrounding the lease are disputed. Apparently, Kerry Spencer's mother—Vycky Spencer—signed a lease for 10212H Sunnylake Place on February 24, 1993, approximately three months prior to the Spencer–Taylor lease. *See* Pl.'s Motion for Partial Summary Judgment ex. 2. The Vycky Spencer lease indicates that she paid a $250 security deposit to Hendersen and that the lease would run from June 1, 1993, through May 31, 1994. *Id.* According to Spencer, her mother was building a house which was ready for occupancy in May 1993. By securing new tenants for the apartment—Kerry Spencer and Taylor—Vycky Spencer was able to break her lease. *Id.* at 3. Spencer claims that her mother relinquished the security deposit by signing it over to her. *See id.* at 3, ex. 7. Hendersen, however, points out that the Spencer–Taylor lease does not indicate that they paid a security deposit. In addition, Hendersen contends that Vycky Spencer received a refund of the security deposit and deposited it in her bank account. *See* Hendersen's Cross–Motion for Summary Judgment at 6, ex. 2.

According to Spencer, Taylor made the rent payments from June to December 1993 and, when he moved out in December, agreed to pay the rent for the remainder of the lease. Pl.'s Motion for Partial Summary Judgment at 5. Spencer made no further rent payments and moved out of the apartment in February 1994. *Id.*

On May 9, 1998, Spencer and her new fiancé, Spencer Fell ["Fell"], entered a sales contract for a $90,000 condominium in Sparks, Maryland. On May 13, they applied jointly for a purchase money mortgage loan from Key Bank & Trust ["Key Bank"]. In processing their loan application, Key Bank ordered and obtained Spencer's credit report from Advanced Information Resources Inc. An officer at the Bank then contacted Spencer and Fell and indicated that he believed the Bank would reject the loan application because of derogatory credit information. Specifically, Spencer's report showed three delinquent balances, one of which was $2858.40 owed to Hendersen–Webb. The Bank denied the loan on May 29, 1998.

The $2858.40 recorded on Spencer's credit report reflected five months of unpaid rent at 10212H Sunnylake Place, plus $176.40 in late charges and $162.00 in court costs. Hendersen detailed these costs in a letter to Spencer dated June 10,

1994. Pl.'s Motion for Partial Summary Judgment ex. 23. The letter also stated that if Spencer did not pay the debt, Hendersen would report the outstanding balance to Equifax Credit Information Services. *Id.* Indeed, the record indicates at least two instances where the delinquent debt was reported to credit reporting agencies. The first instance is reflected in Spencer's January 10, 1997, credit report prepared by Equifax, which indicates that Spencer owed "Hendersen" $2858.00 and that the debt was reported in "11/96." Hendersen's Cross–Motion for Summary Judgment ex. 3. The second instance appears on Spencer's May 15, 1998, credit report prepared by Advanced Information Resources, Inc., which indicates that Spencer owed $2858 to "Henderson Webb" and that debt was reported "05/98" as "still owing per: Mary 410–628–5018." Pl.'s Resp. to Defs.' Cross–Motions for Summary Judgment ex. A. Although Hendersen denies reporting these debts, Spencer alleges that Hendersen or Rupp reported the debts and that "Mary" was a Hendersen employee.

Some time before May 1998, Hendersen referred Spencer's debt to Rupp for collection. Rupp was soon contacted by Alan Thomas Fell ["Alan Fell"], Spencer Fell's father. Alan Fell telephoned Rupp and spoke with Frances Flores about his future daughter-in-law's debt. Flores said she would fax him a copy of Spencer's bill provided that he fax her Spencer's social security number. Alan Fell faxed the information on May 15, 1998, and Flores sent him a print-out of a computer screen showing Spencer's debt as generated by Rupp's computer system. The print-out indicated that Spencer owed the $2858.40 detailed above plus $428.76 for a "15% Attorney's Fee." Pl.'s Motion for Summary Judgment ex. 17. Rupp employees have admitted that the company's computer system automatically added a 15% figure for attorneys fees, but that this number was only for in-house use. Flores Dep. at 31–35; McNeal Dep. at 43–46.

Flores spoke with Spencer by phone in June 1998 and requested her mailing address. Spencer claims that she disputed the debt during the phone call and Flores offered to "cut a deal" for $2200. Flores also told Spencer that Rupp had twelve years in which to collect the debt. Flores Dep. at 25–26.

On June 19, 1998, Zimlin & Kilberg—the law firm representing Rupp—sent a letter to Spencer signed by Robert N. Kilberg. The letter noted that the firm had "been retained" by Hendersen and was requesting payment of the outstanding $2858.40. Pl.'s Motion for Partial Summary Judgment ex. 18. The letter also stated "[i]f legal action is taken, you will be responsible for attorneys fees, court costs, and prejudgment interest, as allowed by your contract." *Id.* Spencer admits that the letter contained the notice required by the FDCPA.

Spencer responded on June 30, 1998, by sending a letter to Kilberg disputing her debt pursuant to the FDCPA. *Id.* ex. 19. In particular, Spencer contended that the court costs and legal fees were invalid, and the debt claimed failed to account for her security deposit. *Id.*

On July 23, 1998, Flores sent Spencer a letter on Rupp letterhead indicating that Spencer owed $2858.40 to Hendersen and that Hendersen had authorized a settlement for $1858.40. *Id.* ex. 20. Spencer claims that Flores attached a new printout of the Rupp computer screen to this letter and that Flores had used "whiteout" to delete the $428.76 for attorneys fees. *Id.* at 9.

## III. DISCUSSION

### A. *The Fair Debt Collection Practices Act*

 The FDCPA protects consumers from the abusive and deceptive practices employed by some debt collectors. *See United States v. National Fin. Services Inc.,* 98 F.3d 131, 135 (4th Cir.1996). The FDCPA is a strict liability statute, *see*

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996), and a plaintiff need only prove one violation of the Act to trigger liability, *see Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996). The Act, however, provides defendants with an affirmative defense: no debt collector may be held liable if it shows by a preponderance of the evidence that (a) the violation was not intentional; (b) it resulted from a bona fide error; and (c) the error occurred despite the debt collector's "maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In carrying out the FDCPA's remedial scheme, courts have interpreted this affirmative defense narrowly. Specifically, the defense does not immunize mistakes of law, even if the defendant relied on the advice of counsel, *see Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989); *Hulshizer v. Global Credit Services, Inc.*, 728 F.2d 1037, 1038 (8th Cir.1984); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 779 (9th Cir.1982), and the errors that may insulate a defendant from liability are generally limited to clerical mistakes, *see Patzka v. Viterbo College*, 917 F.Supp. 654, 659 (W.D.Wis.1996).

Spencer has alleged numerous violations of the FDCPA by Flores, Rupp, Zimlin & Kilberg, and Kilberg in his individual capacity, and seeks summary judgment on these counts.

1. *Attempted Collection of Attorneys Fees*

■ The first violation alleged by Spencer concerns Rupp and Flores' attempt to collect a 15 percent attorney fee when no attorney had worked on the case. The FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15

U.S.C. § 1692f. This provision also supplies a non-exhaustive list of "Unfair Practices," which includes the collection of any fee not expressly authorized by the agreement that created the debt. *Id.* § 1692f(1). Spencer's lease provides that the lessor "may demand as additional rent all legal costs and expenses incurred in instituting [legal proceedings against the tenant for non-payment of rent]." Pl.'s Motion for Partial Summary Judgment ex. 6 ¶ 17. Spencer notes, however, that the lease does not authorize the collection of attorneys fees where no attorneys fees have been incurred.

■ The Court agrees. When Flores faxed the print-out of Rupp's in-house computer screen to Alan Fell on May 15, 1998, it contained a line item of $428.76 for "15% Attorneys Fees." This fax qualifies as an attempt to collect a debt, even though the fax was not sent directly to Spencer. Flores believed Alan Fell to be Spencer's attorney, *see* Flores Dep. at 26–27, and Defendants admit that they considered this fax communication to be Rupp's "first communication with Ms. Spencer … by Ms. Flores to Mr. Fell on [Spencer's] behalf …." Defs.' Response to Pl.'s Motion for Partial Summary Judgment at 3. As such, it was clearly an attempt to collect a debt. In addition, the attorneys fees that Rupp and Flores attempted to collect were not authorized by Spencer's lease. The plain language of the lease makes clear that Hendersen may only collect expenses and fees that have already been incurred. When Flores attempted to collect non-existent attorneys fees on behalf of Hendersen, she violated the FDCPA.

Defendants dispute their liability because the fee resulted from a computer mistake that was later corrected.[1] Although this statement may be true, it does

---

1. Defendants also cite *Blum v. Fisher & Fisher*, 961 F.Supp. 1218 (N.D.Ill.1997), which states that including future attorneys fees in a debt amount when communicating with a debtor is not an FDCPA violation. This case, however, is easily distinguished because it addressed a violation of a different FDCPA provision, attorneys fees were expressly allowed pursuant to the underlying agreement, and the debt collector in that case did not itemize the attorneys fees before instituting court action.

not help the Defendants here. Defendants' admission of a computer mistake is an admission of a FDCPA violation because the FDCPA is a strict liability statute. *See Russell*, 74 F.3d at 33.

■ Debt collectors, however, may not be held liable under the FDCPA if they can establish the bona fide mistake defense. Other than pointing out that the attorneys fee line item was the result of a computer mistake, Defendants have provided no evidence that could lead a reasonable jury to find in their favor. *See Dutton v. Wolhar*, 809 F.Supp. 1130, 1138 (D.Del.1992). To the contrary, the record clearly shows that Rupp's procedures were woefully inadequate in preventing collection of unjustified fees. Indeed, the company's computer program added a 15 percent fee to *every* account without regard to the agreement or document underlying the debt. *See* McNeal Dep. at 43–46. Because Rupp and Flores have no bona fide mistake defense, they are liable for a FDCPA violation and summary judgment will be granted to Spencer on this issue.

### 2. *Misstating the Limitations Period for Debt Collection*

Spencer also alleges that Rupp and Flores violated the FDCPA by asserting that they had 12 years to collect the debt. In particular, she asserts that these Defendants violated sections 1692e(2)(A) and 1692f(1) by misrepresenting the statute of limitations applicable to her debt. Flores admits telling Spencer that Rupp had 12 years to collect the debt, but Defendants argue that this statement was simply a mistake and that such a mistaken belief is a defense under the FDCPA.

■ As with the attorneys fee violation above, Defendants' arguments are of no avail. Flores admits making the statement and the parties agree that the debt was subject to a three-year statute of limitations. *See* Md.Code Ann., Cts. & Jud. Proced. § 5–101 (1998). Defendants, therefore, admit to a violation of the FDCPA. Moreover, the case they cite in support of their mistaken belief defense, *Simmons v. Miller*, 970 F.Supp. 661 (S.D.Ind.1997), is an outlier. The language of the Act is clear: a debt collector's mistaken belief, without evidence of a bona fide error and the use of procedures to avoid such errors, is not sufficient to preclude liability under the FDCPA. 15 U.S.C. § 1692k(c); *see, e.g., Patzka*, 917 F.Supp. at 658–59; *Cavallaro*, 933 F.Supp. at 1154; *Dutton*, 809 F.Supp. at 1138.

■ Flores' mistake, even if it was a mistake of fact, is not sufficient to preclude summary judgment for Spencer on this point. Even if Flores believed that Spencer's lease was under seal, and even if it was an anomaly among the debts collected by Rupp, Defendants have failed to provide evidence of reasonable procedures used to avoid such mistakes. *See* 15 U.S.C. § 1692k(c). Indeed, Flores merely assumed that the debt was under seal and then communicated her mistake to Spencer. Because no reasonable jury could find that Rupp employed suitable procedures to prevent its employees from misreporting overdue debts to consumers, summary judgment will be granted to Spencer on this claim.

### 3. *Attempted Collection of a Stale Debt*

■ With regard to Spencer's third alleged violation, Defendants admit that their efforts to collect the debt from Spencer in 1998 violated the FDCPA because the statute of limitations on the debt had run. Defendants dispute their liability, however, on the grounds that these violations were inadvertent. The Court rejects this defense because an employee's mistake, standing alone, is no defense to liability under FDCPA. *See* § 1692k(c). Absent any evidence that Rupp employed procedures to prevent such mistakes, no reasonable juror could find for the Defendants. The Court will therefore grant summary judgment to Spencer on this claim.

### 4. Attempting to Collect Late Charges Waived by Hendersen

 Spencer also claims that Defendants violated the FDCPA by attempting to collect late charges that had been waived by Hendersen–Webb or were the subject of an accord and satisfaction. Because there are factual questions that would preclude the finding of waiver or accord and satisfaction, the Court will deny summary judgment on this claim.

### 5. Failure to Notify Spencer of her Right to Dispute

Spencer next asserts that Defendants failed to provide her with timely notice of her right to dispute her debt. *See* § 1692g(a). The FDCPA requires debt collectors to send notice within five days of an "initial communication" with "a consumer in connection with the collection of any debt." *Id.* "Consumer" means any person "obligated or allegedly obligated to pay any debt," § 1692a(3), and "communication" refers to the "conveying of information regarding a debt directly or indirectly to any person through any medium," § 1692a(2).

 In this case, Flores' initial communication with Spencer occurred when she faxed information to Alan Fell. Defendants admit that they were aware that this information would reach Spencer, albeit indirectly. *See* Defs.' Resp. to Pl.'s Motion for Partial Summary Judgment at 3. The FDCPA, therefore, required them to send proper notice to Spencer within 30 days of the May 15, 1998, fax communication. Because they did not,[2] Defendants violated the FDCPA.

### 6. Collection Efforts after Spencer Disputed the Debt

 Because Spencer disputed her debt in writing within 30 days of Kilberg's June 19, 1998, letter, Defendants were obligated by the FDCPA to cease collection

until they obtained verification of the debt and mailed it to Spencer. 15 U.S.C. § 1692g(b). On July 23, 1998, however, Flores sent a letter to Spencer offering to settle the debt. Because this letter constitutes an effort to collect the debt and Defendants failed to mail a verification to Spencer, they violated the FDCPA.

 Defendants contest their liability on the grounds that they verified the debt on May 15, 1998, by faxing the computer printout to Alan Fell. The Court disagrees for two reasons. First, the language of the FDCPA is unambiguous on this point: the debt collector must *mail* the verification to the *consumer*. Thus, the fact that Flores faxed a computer printout to the consumer's future father-in-law does not relieve Defendants from liability. Second, the Act does not make any exceptions for verifications sent to the consumer before the consumer disputes the debt in writing. To the contrary, the FDCPA's time sequence is quite clear: (1) the consumer disputes the debt; (2) the debt collector ceases collection; and (3) must continue to cease collection until the debt collector verifies the debt and mails a copy of the verification to the consumer. § 1692g(b).

### 7. False or Misleading Representations

Spencer contends that Kilberg's June 19, 1998, letter violated the FDCPA as a false or misleading representation. *See* § 1692e(5). In particular, Spencer takes issue with a sentence that reads: "[i]f legal action is taken, you will be responsible for attorneys fees, court costs, and pre-judgment interest, as allowed by your contract." She claims this language is deceptive because it would lead a debtor to believe that he or she has no potential defenses to any legal action.

 The Court agrees. To evaluate language in a collection letter, courts

---

**2.** Although Kilberg's June 19, 1998, letter contains the FDCPA-required notice, it was

sent more than 30 days after Defendants' first communication with Spencer.

apply the "least sophisticated debtor" test. *See United States v. National Financial Services, Inc.,* 98 F.3d 131, 135 (4th Cir. 1996). Although an unsophisticated consumer would understand from Kilberg's letter that legal action was not certain, the letter also insinuates that the debtor will inevitably be liable for a string of sundry fees should the debt collector file suit. Because language asserting this type of false leverage is what Congress sought to eliminate by creating the FDCPA, summary judgment will be granted to Spencer on this count.

### 8. *Failure to Give Credit for the Security Deposit*

Spencer alleges that Rupp, Flores, and Kilberg attempted to collect a debt amount that did not account for the security deposit that Hendersen had retained. Defendants oppose this claim by emphasizing that the amount of the security deposit was reflected in Spencer's application to rent the apartment, but not the lease. Defs.' Resp. to Pl.'s Motion for Partial Summary Judgment at 2. Defendants are correct in their factual assertion, but the Court does not agree with the legal conclusion it implies. If Spencer's asserted facts are true, she may be able to establish by parol evidence that she paid a security deposit to Hendersen. *See* 10 West's Maryland Law Encyclopedia, Evidence §§ 123–135 (1999). Because issues of fact are in dispute, Spencer's Motion for Summary Judgment on this issue will be denied.

### 9. *Damages*

In sum, Spencer has established numerous violations of the FDCPA and, therefore, is entitled to damages. The FDCPA provides that debt collectors in violation of the Act are liable for actual damages and "additional damages" up to $1,000 per proceeding. 15 U.S.C. § 1692k(a); *see Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 650 (6th Cir.1994); *Harper v. Better Business Ser-*

*vices, Inc.,* 961 F.2d 1561, 1563 (11th Cir. 1992). Because there are factual disputes surrounding the amount of actual damages, this issue requires resolution at trial. The Court, however, considering the number of violations, awards Spencer additional damages of $1,000.00, for which Defendants are jointly and severally liable. *See Teng v. Metropolitan Retail Recovery Inc.,* 851 F.Supp. 61, 66–67 (E.D.N.Y.1994).

### B. *The Maryland Consumer Debt Collection Act*

The MCDCA protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts. Md.Code Ann., Commercial Law §§ 14–201 to 14–204. Spencer claims that the Defendants violated two provisions of the Act in attempting to collect her debt: (a) section 14–202(3), which prohibits any collector from disclosing false information about a debtor's credit worthiness with knowledge that the information is false; and (b) section 14–202(8), which prohibits any collector from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. Because both provisions require "knowledge" and Defendants have repeatedly asserted that their acts were mistakes, the proper interpretation of the term "knowledge" is essential to this case.

### 1. *The Level of "Knowledge" Required by the MCDCA*

The construction of this term in the context of the MCDCA presents an issue of first impression, for which the Code and caselaw provide little guidance. Considering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term "knowledge" in the Act does not immunize debt collectors from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. *See Hop-*

*kins v. State,* 193 Md. 489, 498, 69 A.2d 456, 460 (1949). Moreover, in the context of consumer protection, "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996) (citing *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)). Professional debt collectors and their attorneys, therefore, must be held to be aware of laws affecting the validity of their collection efforts. *Cf. Golt v. Phillips,* 308 Md. 1, 10, 517 A.2d 328, 332 (1986) (applying similar rule to landlords in consumer protection context).

 In addition, with regard to mistakes or misrepresentations of fact, the Court holds that defendants can be found liable under paragraphs (3) or (8) of the MCDCA for disclosing information or threatening to enforce a right with actual knowledge or reckless disregard as to the falsity of the information or the existence of the right. This standard comports with the level of knowledge required for the similar common law actions of fraud, *see Ellerin v. Fairfax Savings, F.S.B.,* 337 Md. 216, 234, 652 A.2d 1117 (1995), and defamation, *see Jacron Sales Co. v. Sindorf,* 276 Md. 580, 596, 350 A.2d 688, 697 (1976), and also squares with caselaw holding that punitive damages are not available for violations of the Act. *See Cilento v. B.T. Credit Co.,* 424 F.Supp. 1, 2 (D.Md. 1977). It would be incongruous to require a level of knowledge associated with punitive damages when the statute does not allow them. *See Ellerin,* 337 Md. at 234, 652 A.2d 1117 (requiring plaintiffs to prove knowledge when seeking punitive damages). With these standards established, the Court turns to Spencer's specific allegations.

3. These claims are: (a) asserting the right to collect a portion of Spencer's security deposit with no legal right; (b) attempting to collect a 15% attorney fee when there was no attorney involved; (c) asserting that Rupp had 12 years to collect the debt; (d) attempting to collect the debt in 1998 when the statute of limitations had run; and (e) attempting to collect late charges that had been waived.

*2. Violations of Section 14–202(3)*

Spencer alleges that Hendersen and/or Rupp violated the Act by communicating false information about her debt to credit reporting agencies. Both Spencer and Hendersen have moved for summary judgment on this claim.

 As noted earlier, the record indicates two instances—one in 1996 and one in 1998—when Spencer's debt to Hendersen was reported to credit agencies. The Court will grant summary judgment to Hendersen with regard to the 1996 report. As addressed more fully in the defamation discussion to follow, the information reported in 1996 was not "false" by defamation standards and, therefore, did not violate section 14–202(3) of the MCDCA.

 The 1998 credit reporting, in contrast, raises disputed issues of material fact that preclude resolution at the summary judgment stage. The parties' motions for summary judgment, therefore, will be denied.

*3. Violations of Section 14–202(8)*

 Spencer claims that the Defendants violated the MCDCA's prohibition against claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *See* § 14–202(8). The Court will deny her motion for summary judgment due to disputed issues of material fact. In contrast to the FDCPA, the Maryland Act is not a strict liability statute. It requires the plaintiff to demonstrate that the collector had "knowledge" that the claims it asserted did not exist. Spencer will have the opportunity to prove that the Defendants either had actual knowledge that their asserted claims were invalid or acted with reckless disregard as to the validity of the claims.[3]

Both Hendersen and Spencer have moved for summary judgment on Spencer's claim that Hendersen transferred Spencer's security deposit to Vycky Spencer's account without authorization. The Court will grant Hendersen's motion on this issue because it fails to state a violation of the MCDCA.

### 4. Henderson–Webb's Motion for Summary Judgment

Hendersen has moved for summary judgment on the alleged MCDCA violations, arguing that it cannot be held liable because it did not undertake any efforts to collect Spencer's debt. The parties do not seem to dispute the fact that Hendersen itself did not attempt to collect the debt. Instead, their disagreement centers on whether Hendersen and Rupp were in a principal-agent relationship. Hendersen argues that they were not, asserting that Rupp was an independent contractor. Furthermore, Hendersen contends that, even if Rupp were its agent, Hendersen cannot be liable for its agent's intentional torts.

In the absence of special circumstances, a collection agency is an independent contractor. *See* 15A Am.Jur.2d Collection & Credit Agencies § 2 (1976 & 1999 Supp.). An independent contractor, however, may be an agent under Maryland law, *see, e.g., Candlewood Obstetric–Gynecologic Associates v. Signet Bank/Maryland*, 805 F.Supp. 328, 331 (D.Md.1992), and several courts have found a principal-creditor relationship between a creditor and collection agency. *See* 15A Am.Jur.2d. at § 2.

Spencer has the burden of proving that Hendersen and Rupp were in a principal-agent relationship, *see State v. Cottman Transmissions Systems, Inc.*, 86 Md.App. 714, 732–33, 587 A.2d 1190, 1199 (1991), and the ultimate question is one of control, *see Green v. H & R Block, Inc.*, 355 Md. 488, ——, 735 A.2d 1039, 1051–52 (1999). Control does not mean control over the minutia of the agent's actions, such as physical acts. *See id.* The key is that the principal must have ultimate responsibility to control the end result of the agent's actions. *See id.*

Here, Hendersen asserts that Rupp was an independent contractor, but that does not resolve the issue because, as noted, some independent contractors may qualify as agents. Because there are disputed issues of material fact as to the parties' relationship, the issue must be resolved at trial.

Hendersen asserts that even if Rupp were its agent, it cannot be responsible for Rupp's violations of the MCDCA because a principal cannot be held responsible for the torts or malfeasance of its agents. The Court disagrees. Although Maryland courts have often refused to impose liability on principals for physical harm committed by their agents, they have imposed liability for non-physical torts. *See, e.g., B.P. Oil Corp. v. Mabe*, 279 Md. 632, 643, 370 A.2d 554, 560–61 (1977) (citing Restatement (Second) of Agency § 267); *Purdum v. Edwards*, 155 Md. 178, 141 A. 550 (1928); *Sanders v. Rowan*, 61 Md.App. 40, 52–55, 484 A.2d 1023, 1029–31 (1984); *Johns Hopkins Univ. v. Hutton*, 297 F.Supp. 1165, 1210 (D.Md.1968), *rev'd in part on other grounds*, 422 F.2d 1124 (4th Cir.1970); *see also* Restatement (Second) of Agency § 257 cmt. b (1957). Given that the MCDCA creates a statutory cause of action along the lines of common law torts, the Court finds that the same rules of agency apply to violations of the statute. Consequently, if Spencer can prove at trial that Rupp was Hendersen's agent, Hendersen will be liable for Rupp's violations of the MCDCA.

### 5. Damages

The issue of damages will be addressed at trial, but any recovery Spencer receives under the MCDCA must be limited to proximate damages. *See* § 14–203. Punitive damages are not available for vio-

lations of the Act. *See Cilento,* 424 F.Supp. at 2.

### C. *Defamation*

Count III of Spencer's complaint seeks damages for credit defamation against Hendersen, Flores and Rupp. Spencer claims these Defendants made false and defamatory statements to one or more credit reporting agencies by falsely reporting her debt. Defendants have moved for summary judgment on this issue, claiming that the FDCPA preempts Spencer's claim and, in any case, no defamation occurred.

Section 1681h of the Fair Credit Reporting Act ["FCRA"] provides that "no consumer may bring any action or proceeding in the nature of defamation ... based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action." 15 U.S.C. § 1681h(e). "Consumer report" is defined to include written communications by a consumer reporting agency that bear on the consumer's credit worthiness and are used to establish the consumer's eligibility for credit to be used primarily for personal, family or household purposes. *Id.* § 1681a(d). An "adverse action" includes an action or determination that is adverse to the consumer's interest and is made in connection with a consumer application. *Id.* § 1681a(k).

■ Here, Spencer learned about her debt from Key Bank when it denied her loan. The information, therefore, came from a user. The report at issue qualifies as a "consumer report" because it discussed Spencer's credit worthiness in connection with her attempt to procure a mortgage loan, which is a household or personal purpose. Key Bank, therefore, was a "user of a credit report" when it informed Spencer about her credit report, and the bank took an "adverse action" against her by denying her credit after she applied for a mortgage. Because the allegedly defamatory information was disclosed to Spencer by a user of a consumer report, and that user took an adverse ac-

tion against her, FCRA section 1681h applies.

■ FCRA provides qualified immunity from state law defamation claims to those who furnish information to a consumer reporting agency. *See Lema v. Citibank (South Dakota), N.A.,* 967 F.Supp. 150, 151 (D.Md.1997); *Alvarez Melendez v. Citibank,* 705 F.Supp. 67, 70 (D.P.R.1988). Given that Spencer alleges that Hendersen, Flores and Rupp defamed her by furnishing information to a reporting agency, they are entitled to FCRA immunity. Qualified immunity under FCRA, however, "does not extend to common law actions based on false information furnished with malice or willful intent to injure the consumer." *See Lema,* 967 F.Supp. at 151. To overcome FCRA immunity, therefore, Spencer must demonstrate that the information provided by the defendants was (a) false; and (b) furnished with malice or willful intent to injure her.

■ The record indicates two potential instances when one or more of the defendants may have submitted debt information to a credit reporting agency. The first instance was in 1996, as reflected on the January 1997 Equifax report. *See* Hendersen's Cross–Motion for Summary Judgment ex. 3. However, Spencer cannot establish a defamation claim with regard to the information contained in that report because it was not false. The undisputed facts show that Spencer failed to pay five months rent at $504 per month, for a total of $2,520. Although Spencer may dispute the costs, fees, and disposition of her security deposit, the base amount of her debt was at least $2,500. For the purposes of a defamation claim, a statement is only false if it is "not substantially correct." *Batson v. Shiflett,* 325 Md. 684, 726, 602 A.2d 1191, 1212 (1992). Minor inaccuracies do not amount to falsity provided that the substance or gist of the statement is justified. *See id.* Because the 1996 reporting was substantially correct in that it was only

slightly inaccurate, the Court will dismiss Spencer's claim relating to this report.

■ The second potential instance of defamation occurred in connection with the May 1998 credit report. The information in this report was "false" in the sense that the debt was stale. Therefore, Spencer has carried her burden of proving the falsity of the claim. *See Jacron Sales Co. v. Sindorf,* 276 Md. 580, 597, 350 A.2d 688, 698 (1976).

■ To avoid the preemptive effect of FCRA, however, Spencer must also demonstrate that whoever made this report acted with the requisite state of mind. To demonstrate "malice," Spencer must show that one of the defendants acted with reckless disregard to the truth or falsity of the reported debt. *See Thornton v. Equifax, Inc.,* 619 F.2d 700, 705 (8th Cir.1980); *Frost v. Experian,* No. 98 CIV. 2106, 1999 WL 287373, at *6 (S.D.N.Y. May 6, 1999); *Yeager v. TRW Inc.,* 984 F.Supp. 517, 522 (E.D.Tex.1997); *Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 833 (E.D.N.Y.1994). The only evidence in the record that could support such a claim is the fact that Spencer's debt was barred by the Maryland statute of limitations when reported in May 1998.

■ The Court will grant Defendants' Motion as to the 1998 reporting of Spencer's debt because they are entitled to the qualified immunity provided by FCRA. Spencer has failed to provide evidence that would convince a reasonable juror that whoever actually reported the debt did so with malice or willful intent to injure her. There is no evidence of willful intent to injure, and the record simply does not contain enough evidence of reckless disregard to avoid summary judgment. Reckless disregard requires the plaintiff to show that the defendant either (1) made the statement with a "high degree of awareness of ... probable falsity"; or (2) actually entertained serious doubts as to the truth of the statement. *Foretich v. Capital Cities/ABC,* 37 F.3d 1541, 1551 n.

8 (4th Cir.1994); *see also Yeager,* 984 F.Supp. at 524. Although the plaintiff is permitted to establish this state of mind through circumstantial evidence, *see Yeager,* 984 F.Supp. at 524, the evidence in the record shows that Flores' state of mind was, if anything, confused about the three-year statute of limitations, *see* Pl.'s Resp. at 5, and there is no evidence to inform the trier of fact about Hendersen's state of mind. Absent evidence of malice, Spencer's defamation claim is barred by FCRA.

## IV. CONCLUSION

Based on the foregoing analysis, Spencer's Motion for Partial Summary Judgment will be granted in part and denied in part. Hendersen's Cross–Motion for Summary Judgment will also be granted in part and denied in part, and the Cross–Motion for Summary Judgment filed by the other Defendants will be granted.

## ORDER

In accordance with the attached Memorandum, it is this 16th day of December 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Partial Summary Judgment BE, and the same IS, hereby GRANTED IN PART AND DENIED IN PART; and

2. That Defendant Hendersen–Webb's Cross–Motion for Summary Judgment BE, and the same IS, hereby GRANTED IN PART AND DENIED IN PART; and

3. That the Cross–Motion for Partial Summary Judgment of Defendants Robert L. Kilberg, Zimlin & Kilberg, Rupp & Associates, Inc., and Frances Flores BE, and the same IS, hereby, GRANTED; and

4. That Defendants Robert L. Kilberg, Zimlin & Kilberg, Rupp & Associates, Inc., and Frances Flores BE, and the same ARE, hereby JOINTLY AND SEVERALLY LIABLE for additional damages in the sum of $1000.00 for violations of the Fair Debt Collection Practices Act, with actual damages to be determined at trial; and

5. That copies of this Memorandum and Order be mailed to counsel for the parties.