*Larry S. Chavis, et al. v. Blibaum & Associates, P.A.*; *Bryione K. Moore, et al. v. Peak Management LLC*, No. 30, September Term, 2020. Opinion by Biran, J.

**CONSUMER PROTECTION – MARYLAND CONSUMER DEBT COLLECTION ACT –** The Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code Ann., Commercial Law (CL) § 14-202(8) (2013 Repl. Vol., 2015 Supp.), provides: "In collecting or attempting to collect on an alleged debt a collector may not: … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." The Court of Appeals held that the circuit court erroneously dismissed Petitioners' claims under CL § 14-202(8) (and corresponding claims under the Maryland Consumer Protection Act (the "MCPA")) based on Respondents' collection of post-judgment interest at a rate of 10%, instead of the applicable legal rate of 6%. The Court rejected the distinction that some courts have drawn between "methods" of debt collection and "amounts" of debts sought to be collected, when assessing a claim under CL § 14-202(8). A plaintiff is not precluded from invoking § 14-202(8) when the amount claimed by the debt collector includes sums that the debt collector, to its knowledge, did not have the right to collect.

**CONSUMER PROTECTION – MCDCA, CL § 14-202(8) – "WITH KNOWLEDGE" ELEMENT –** The Court of Appeals held that, in order to prevail under CL § 14-202(8), a plaintiff must show that a debt collector acted with actual knowledge or with reckless disregard as to the falsity of the existence of the claimed right. Although § 14-202(8) does not impose strict liability on a debt collector for a mistake of law, neither does a debt collector escape liability under § 14-202(8) whenever, in the absence of controlling authority, the collector makes a mistake of law. In the situation where the law concerning the claimed right is unsettled, a debt collector's reckless mistake of law violates CL § 14 202(8); a non-reckless mistake of law is not a violation. A debt collector's mental state in claiming, attempting, or threatening to enforce a right is a question of fact.

**CONSUMER PROTECTION – MCDCA – WRIT OF GARNISHMENT –** The Court of Appeals held that Petitioners could not state a viable claim under CL § 14-202(8) based on Respondents' inclusion of the cost of the filing fee for a writ of garnishment in the amount sought to be garnished.

**APPELLATE PRACTICE – REMAND – CLASS CERTIFICATION –** When Petitioners in the case against Respondent Peak Management LLC filed their first motion for class certification, the circuit court had already dismissed Petitioners' MCDCA claim (and their claim under the MCPA based on the alleged violation of the MCDCA). Given the possibility that the circuit court would have granted a motion for class certification, had the MCDCA and MCPA claims been before it at the time it ruled on the motion, the Court of Appeals held that, upon remand, Petitioners shall be permitted to file a new motion for class certification.

Circuit Court for Baltimore County
Case No. 03-C-18-010602

Circuit Court for Baltimore City
Case No. 24-C-17-000033

Argued: March 5, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 30

September Term, 2020

LARRY S. CHAVIS, ET AL.

v.

BLIBAUM & ASSOCIATES, P.A.

BRYIONE K. MOORE, ET AL.

v.

PEAK MANAGEMENT LLC

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Biran, J.
Getty, J., dissents.

Filed: August 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In *Ben-Davies v. Blibaum & Assocs., P.A.*, 457 Md. 228 (2018), this Court answered a certified question from the United States District Court for the District of Maryland regarding the correct legal rate of post-judgment interest where a landlord has obtained a judgment against a residential tenant for breach of contract. We held in *Ben-Davies* that "where a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes unpaid rent and other expenses, a post-judgment interest rate of 6% applies[.]" *Id.* at 275.

Petitioners Bryione Moore, Albert Grantham, Patricia Grantham, Sharone Crowell, Larry S. Chavis, Laronda Green, and Cassandra Reid rented residential properties managed by Respondent Peak Management LLC ("Peak") or another entity. After Petitioners defaulted on their leases, Peak or another entity engaged Respondent Blibaum & Associates, P.A. ("Blibaum"), a law firm, to file suit against Petitioners in the District Court of Maryland for breach of contract. Blibaum obtained judgments against Petitioners that included amounts of unpaid rent, and subsequently attempted to collect on the judgments by garnishing Petitioners' wages. In the requests for writs of garnishment, Blibaum included post-judgment interest at a rate of 10% as well as post-judgment court costs (the filing fees for the writs of garnishment). This collection activity occurred before we issued our opinion in *Ben-Davies*.

Several of the Petitioners filed a putative class action lawsuit in the Circuit Court for Baltimore City against Peak in which they claimed, among other things, that Peak violated the Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code Ann.,

Commercial Law Article ("CL"), Title 14, Subtitle 2, and the Maryland Consumer Protection Act (the "MCPA"), CL, Title 13, by obtaining writs of garnishment that charged post-judgment interest at a rate of 10%, rather than 6%, and by including post-judgment court costs (*i.e.*, filing fees for the requests for writs of garnishment) in the amounts sought to be garnished. Several of the Petitioners filed a similar lawsuit against Blibaum in the Circuit Court for Baltimore County.

In the Baltimore City case, Peak moved to dismiss the MCDCA and MCPA claims, and the circuit court granted that motion. After that ruling, Petitioners moved for class certification with respect to the sole claim remaining at that time, which was for unjust enrichment. The circuit court denied the motion for class certification after holding a hearing. Petitioners then filed a second motion for class certification and requested a hearing. The circuit court denied the second motion for class certification without a hearing. The circuit court subsequently ruled on the parties' cross-motions for summary judgment, resolving the unjust enrichment claims as to the named plaintiffs. Meanwhile, in the Baltimore County case, Blibaum filed a motion to dismiss all claims, which the circuit court granted.

On appeal, the Court of Special Appeals consolidated the two cases for decision and held that both circuit courts properly dismissed the MCDCA and MCPA claims. With respect to the case against Peak, the court also affirmed the denial of the second motion for class certification. Petitioners sought further review in this Court.

Respondents argue that the judgment of the Court of Special Appeals with respect to the MCDCA and MCPA claims should be affirmed because Petitioners impermissibly

2

seek to hold them liable for collecting certain amounts from Petitioners, rather than challenging the methods Respondents used to collect those debts. In addition, Respondents contend that, prior to this Court deciding *Ben-Davies*, it was impossible for a debt collector to have the requisite knowledge under the MCDCA that the collector lacked the right to charge post-judgment interest at a rate of 10%. Respondents also argue that they were permitted to include the post-judgment court costs to obtain the writs of garnishment in the total amounts subject to garnishment.

For the reasons stated below, we conclude that the circuit courts incorrectly dismissed the MCDCA and MCPA claims to the extent Petitioners alleged violations of those statutes based on Respondents' collection of post-judgment interest at a rate of 10%. However, we agree with the Court of Special Appeals that Respondents did not violate the MCDCA (or the MCPA) by including the costs of the filing fees to obtain the writs of garnishment in the amounts to be garnished.[1]

---

[1] Given our disposition of the MCDCA and MCPA claims, we will not decide whether the circuit court erred by denying Petitioners' second motion for class certification of the unjust enrichment claim in the case against Peak without first holding a hearing. As discussed below, on remand, the plaintiffs in that case will be permitted to file a new motion for class certification, which the circuit court shall deem to be an initial motion for class certification.

# I

## Background[2]

### A. *Bryione K. Moore, et al. v. Peak Management LLC*

    1.  Pertinent Allegations

Peak is a Maryland limited liability company that manages real estate properties and self-storage facilities throughout the greater Baltimore area. Peak retained Blibaum to collect debts owed by Petitioners and to pursue legal remedies to aid in debt collection.

Petitioners Moore, Albert Grantham, Patricia Grantham, Crowell, and Chavis signed residential leases with Peak. Each of these Petitioners subsequently defaulted on their lease with Peak. Blibaum filed a complaint in the District Court of Maryland against each Petitioner for breach of contract, seeking damages for the default and breach of lease, and obtained a judgment. When entering the judgment in each case, the District Court of Maryland ordered post-judgment interest "at the legal rate." The judgment did not set forth a specific rate of post-judgment interest. When Petitioners failed to satisfy the judgments entered against them, Blibaum requested and obtained writs of garnishment to collect the judgments. When requesting the writs of garnishment, Blibaum stated on the District Court's "Request for Writ of Garnishment" form that it applied post-judgment interest at a rate of 10% to the money judgments it had obtained on behalf of Peak. Applying post-judgment interest at a rate of 10% was the standard practice of Blibaum as Peak's agent. It

---

[2] Like the Court of Special Appeals before us, we consolidate the appeals of both cases for decision. We shall summarize the pertinent allegations and procedural history of the two cases separately.

4

was also standard practice for Blibaum, on behalf of Peak, to include post-judgment costs (*i.e.*, the filing fees to obtain the writs of garnishment) in the requests for writs of garnishment.

## 2. Related Federal Case

Prior to filing her complaint against Peak in the Circuit Court for Baltimore City, Moore sued Blibaum in the United States District Court for the District of Maryland, alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the MCDCA, and the MCPA, through Blibaum's work as Peak's collection agent. *Bryione K. Moore v. Blibaum & Assocs., P.A.,* Civ. No. 1:16-cv-3546-JFM, 2017 WL 462508 (D. Md. Feb. 2, 2017) (Memorandum). The federal district court dismissed the complaint on February 2, 2017, following which Moore appealed to the United States Court of Appeals for the Fourth Circuit. On July 19, 2017, the Fourth Circuit reversed and remanded. *Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205 (4th Cir. 2017). On remand, the district court certified a question to this Court concerning the proper rate of post-judgment interest on a judgment obtained against a tenant for breach of contract. As stated above, we answered the certified question in *Ben-Davies*, holding that the legal rate of post-judgment interest on a judgment for unpaid rent obtained in a breach of contract action is 6%. *Ben-Davies*, 457 Md. at 275.

## 3. The Class Action Lawsuit Against Peak in the Circuit Court for Baltimore City

### a. Motions to Dismiss

On January 4, 2017, Moore filed a putative class action lawsuit against Peak in the Circuit Court for Baltimore City. The Granthams, Crowell, and Chavis were added as

5

named plaintiffs in subsequent amended complaints. Petitioners sought a declaratory judgment (Count I), and also brought claims under the MCDCA, CL § 14-202(8)[3] (Count II), and the MCPA, CL §§ 13-303(5)[4] and 13-301(14)(iii)[5] (Count III), and for common law unjust enrichment (Count IV). Petitioners alleged that Peak knowingly or recklessly charged and collected post-judgment interest at a rate of 10% instead of at the maximum legal rate of 6% under Maryland Code, Courts and Judicial Proceedings (CJ) § 11-107(b) (2013 Repl. Vol.).[6] Petitioners also claimed that, through the writs of garnishment, Peak collected or attempted to collect costs in excess of the amount of costs actually awarded in the judgment.

Peak moved to dismiss the operative complaint on March 31, 2017. On April 19, 2017, the circuit court granted Peak's motion to dismiss the MCDCA and MCPA claims (Counts II and III), but denied the motion as to the request for declaratory judgment

---

[3] Under CL § 14-202(8), "[i]n collecting or attempting to collect on an alleged debt a collector may not: … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

[4] Under CL § 13-303(5), a person "may not engage in any unfair, abusive, or deceptive trade practice … in … [t]he collection of consumer debts."

[5] Under CL § 13-301(14)(iii), "[u]nfair, abusive, or deceptive trade practices include any…violation of a provision of: Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act[.]" Therefore, a violation of the MCDCA also constitutes a violation of the MCPA.

[6] Under CJ § 11-107(b), "[t]he legal rate of interest on a money judgment for rent of residential premises shall be at the rate of 6 percent per annum on the amount of the judgment." Under CJ § 11-107(a), except in cases involving loans of money (as described in CJ § 11-106), "the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment."

6

(Count I) and the unjust enrichment claim (Count IV). In granting dismissal on the MCDCA claim, the circuit court reasoned that there was no dispute that the "right" to collect the debt existed, rendering the alleged collection of post-judgment interest at a rate (10%) in excess of the correct legal rate (6%) a dispute only as to the amount of the debt, which did not affect the existence of that right. The circuit court also dismissed the MCPA claim, as the dismissal of the MCDCA claim eliminated the basis for an MCPA violation.

After another amendment to the complaint, a stay of the case pending this Court's decision in *Ben-Davies*, the lifting of the stay following the issuance of *Ben-Davies*, and more motions practice, the circuit court in July 2018 dismissed all claims except for the unjust enrichment claim.

### b. Motions for Class Action Certification

On May 14, 2018, Petitioners filed their first motion for class certification and requested a hearing. Peak opposed the motion for class certification.

On August 10, 2018, the circuit court conducted a hearing on the pending motion for class certification. Petitioners sought to certify the following class: "All natural persons against whom Peak Management LLC obtained a judgment that was not satisfied prior to January 4, 2014, in a lawsuit brought in Maryland by Blibaum & Associates, LLC on behalf of Peak Management LLC and who have since satisfied that judgment." The circuit court denied the motion for class certification in a written opinion dated September 10, 2018. On December 18, 2018, Petitioners filed a second motion for class certification and request for a hearing. Petitioners based their second motion for class certification on new information

7

they learned through deposing Gary Blibaum, Esq. The circuit court denied the second motion for class certification without a hearing by order dated January 11, 2019.

### c. *Motion for Summary Judgment*

The circuit court having refused to certify the case as a class action, Petitioners stood as the only plaintiffs in the complaint. On March 8, 2019, Peak filed a motion for summary judgment on the sole remaining claim for unjust enrichment. Peak argued the unjust enrichment claim failed as a matter of law for each Petitioner because they either failed to satisfy the judgment against them and therefore did not pay excess interest (Moore and Crowell) or satisfied the judgment and had since been reimbursed by Peak for the excess interest they had paid (the Granthams and Chavis). Petitioners cross-moved for summary judgment. After conducting a hearing on the cross-motions for summary judgment on April 15, 2019, the circuit court granted Peak's motion for summary judgment as to Moore and Crowell, but denied the motion as to the Granthams and Chavis. The court then granted Petitioners' motion for summary judgment as to the Granthams and Chavis, and awarded those plaintiffs restitution of $16.14 and $67.97, respectively.

Petitioners filed a timely notice of appeal on May 7, 2019.

## B. *Larry S. Chavis, et al. v. Blibaum & Associates, P.A.*

On October 22, 2018, on behalf of themselves and others similarly situated, several of the Petitioners filed a putative class action lawsuit against Blibaum in the Circuit Court

for Baltimore County.[7] Petitioners initially asserted two claims: (1) violation of the MCDCA, CL § 14-202(11)[8]; and (2) reasonable attorney's fees for a violation of the MCPA based on the alleged violation of the MCDCA. Blibaum moved to dismiss the complaint on December 11, 2018.

Prior to a ruling on the pending motion to dismiss, Petitioners filed a First Amended Class Action Complaint on January 4, 2019. While reasserting the two original claims, Petitioners added a third claim in the amended complaint for a violation of CL § 14-202(8). The alleged wrongful conduct underlying each claim was Blibaum's charging of post-judgment interest at a rate of 10% instead of 6%. Petitioners also claimed that Blibaum collected or attempted to collect costs, *i.e.*, filing fees charged for obtaining writs of garnishment, in excess of the amount of costs actually awarded in the judgments.

On January 11, 2019, Blibaum moved to dismiss the amended complaint. Blibaum argued that the CL § 14-202(11) claim failed because that provision did not become effective until October 1, 2018 – well after any alleged harm occurred – and the General Assembly did not intend for the statute to have retroactive effect. In addition, Blibaum sought dismissal of the § 14-202(8) claim on the grounds that, as a matter of law, Blibaum did not use an improper debt collection method or knowingly collect or attempt to collect

---

[7] Petitioners alleged that Blibaum's principal place of business is located in Baltimore County.

[8] Under CL § 14-202(11) (2013 Repl. Vol., 2018 Supp.), a debt collector may not, when collecting or attempting to collect a debt, "[e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act."

9

excessive post-judgment interest and/or an unauthorized charge through wage garnishment.

On April 11, 2019, the circuit court conducted a hearing on Blibaum's motion to dismiss. On April 18, 2019, the court issued an order granting the motion to dismiss and dismissing the amended complaint with prejudice. On April 26, 2019, Petitioners filed a timely notice of appeal.

### C. Appeals

The Court of Special Appeals consolidated the cases against Peak and Blibaum for decision. In a reported opinion, the Court of Special Appeals affirmed the decisions of the circuit courts. *Chavis v. Blibaum Assocs., P.A.*, 246 Md. App. 517 (2020). The intermediate appellate court held that "[t]he MCDCA, and in particular § 14-202, is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Id.* at 528 (internal quotation marks and citation omitted). The court viewed Petitioners' MCDCA claim regarding the charging of excess post-judgment interest as a challenge to the amount of debt owed, rather than as a challenge to a method of debt collection. *Id.* at 530. The court added that "the parties' legal disagreement" concerning the correct rate of post-judgment interest – "that was ultimately resolved by the Court of Appeals – does not result in a cognizable claim under the MCDCA." *Id.* at 531 n.4.

The Court of Special Appeals then considered whether a judgment creditor may include the filing fee for a writ of garnishment in the amount it seeks to collect through the garnishment. Petitioners argued that the cost of the filing fee for the writ of garnishment was not a cost "actually assessed in the cause" when the judgment was ordered, as required

10

by CL § 15-605(c). *Id.* at 531. The intermediate appellate court disagreed and held that "CL § 15-605(c) refers to the order that a judgment creditor must follow when it receives payments from a garnishee. It does not restrict the types of costs that a creditor is entitled to receive." *Id.* at 532. Important to the court was that Blibaum properly used and completed the published and approved District Court of Maryland form to request a writ of garnishment, which explicitly included a line for "[t]otal court costs, including this writ." *Id.* at 531-32.

With respect to the *Peak* case, Petitioners also challenged the circuit court's denial of the second motion for class certification without a hearing. Petitioners argued that Maryland Rule 2-231(d) requires the court to hold an evidentiary hearing if one is requested. The intermediate appellate court rejected that argument. After examining the plain language of Maryland Rule 2-231(d), the court stated that "[c]ritically, the circuit court held an extensive hearing" on Petitioners' first class certification motion. *Id.* at 540. In addition, the court noted that Petitioners had "made a tactical decision to file the first motion for class certification prior to discovery." *Id.* Under such circumstances, the intermediate appellate court held that the circuit court did not abuse its discretion when it denied the second motion for class certification without a hearing. According to the Court of Special Appeals, Petitioners were not "entitled to a hearing each time they file the same motion" and "cite[d] no authority in support of their contention that they are entitled to multiple hearings on each of their motions for class certification." *Id.*

11

On July 30, 2020, Petitioners filed a petition for a writ of *certiorari.* On October 6, 2020, we granted their petition. *Chavis v. Blibaum & Assocs., P.A.*, 471 Md. 100 (2020). Petitioners present two questions for review, which we have rephrased as follows:

I.      Did Petitioners properly state a claim under the MCDCA, CL § 14-202(8), based on: (a) Respondents' collection of post-judgment interest at a rate of 10% prior to this Court's decision in *Ben-Davies*; and/or (b) Respondents' inclusion of filing fees to obtain the writs of garnishment in the amounts sought to be garnished?

II.     Under Maryland Rule 2-231, where a circuit court has previously denied a motion for class certification after holding a hearing, does the circuit court abuse its discretion by denying a subsequent motion for class certification without conducting another hearing?

**II**

**Standard of Review**

A defendant may seek dismissal of a complaint under Maryland Rule 2-322(b)(2) if the complaint "fail[s] to state a claim upon which relief can be granted." Whether a motion to dismiss was properly granted or not by a trial court is a question of law we review *de novo*, with no deference given to the trial court. *Barclay v. Castruccio*, 469 Md. 368, 373 (2020); *see also Reichs Ford Road Joint Venture v. State Roads Comm'n*, 388 Md. 500, 509 (2005). In our review, we "must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.,* the allegations do not state a cause of action for which relief may be granted." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010).

12

An appellate court ordinarily reviews a trial court's decision regarding class certification for abuse of discretion. *Creveling v. Gov't Emp. Ins. Co.*, 376 Md. 72, 90 (2003). However, "whether the trial court used a correct legal standard in determining whether to grant or deny class certification is a question of law that we review *de novo*." *Id.*

## III

## Discussion

### A. Petitioners' Claims Under the MCDCA and the MCPA

The MCDCA applies to any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." CL § 14-201(b) (defining "collector"). During the period relevant to this case, the MCDCA prohibited nine categories of conduct relating to debt collection:

In collecting or attempting to collect an alleged debt a collector may not:

(1) Use or threaten force or violence;

(2) Threaten criminal prosecution, unless the transaction involved the violation of a criminal statute;

(3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false;

(4) Except as permitted by statute, contact a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor;

(5) Except as permitted by statute, disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information;

13

(6) Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;

(7) Use obscene or grossly abusive language in communicating with the debtor or a person related to him;

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or

(9) Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not.

CL § 14-202 (2013 Repl. Vol., 2015 Supp.).[9]

We have described the MCDCA, along with the MCPA, as "remedial consumer protection … statutes," the "overarching purpose and intent" of which "is to protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities." *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126, 132 (2020); *see also Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999) (noting the MCDCA's "remedial aim"); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719,

---

[9] The General Assembly added two categories of prohibited conduct – new subsections (10) and (11) – to § 14-202 in 2018, after the conduct at issue in these cases had occurred. 2018 Md. Laws, Ch. 731, § 1; Ch. 732, § 3. The new provisions make it a violation of § 14-202 to:

(10) Engage in unlicensed debt collection activity in violation of the Maryland Collection Agency Licensing Act; or

(11) Engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act.

CL § 14-202 (2013 Repl. Vol. 2018 Supp.).

14

732 (D. Md. 2011) (same). A violation of the MCDCA also constitutes a *per se* violation of the MCPA as an "unfair, abusive, or deceptive trade practice." CL § 13-301(14)(iii).

Petitioners allege that Respondents violated CL § 14-202(8) by collecting excess post-judgment interest and by including post-judgment court costs (*i.e.*, filing fees to obtain the writs of garnishment) in their requests for writs of garnishment. Under § 14-202(8), a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." To prove a claim under this provision of the MCDCA, a complainant must establish two elements: (1) the debt collector "did not possess the right to collect the amount of debt sought"; and (2) the debt collector "attempted to collect the debt knowing that [it] lacked the right to do so." *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 677 (2018) (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 420 (D. Md. 2018)) (cleaned up), *aff'd sub nom. Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126 (2020).

The circuit courts granted Respondents' motions to dismiss Petitioners' MCDCA and MCPA claims, and the Court of Special Appeals affirmed those dismissals. For the reasons stated below, we conclude that Petitioners pled viable claims under the MCDCA (and, therefore, the MCPA as well) based on Respondents' collection of post-judgment interest at a rate of 10%. However, we agree with the Court of Special Appeals that Respondents' inclusion of the cost of the filing fees for the writs of garnishment in their requests for writs of garnishment, as a matter of law, did not violate CL § 14-202(8).

15

1. <u>Post-Judgment Interest</u>

Petitioners argue that the circuit courts erroneously dismissed the MCDCA claims to the extent they alleged violations of CL § 14-202(8) based on Respondents' charging post-judgment interest at a rate of 10%, as opposed to 6%. To resolve this claim of error, we must interpret § 14-202(8).

When we interpret a statute, our goal is to ascertain and give effect to the actual intent of the General Assembly. *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). We begin this inquiry by examining the plain meaning of the statutory language. *Agnew v. State*, 461 Md. 672, 679 (2018). If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry ordinarily comes to an end, and we apply the statute as written, without resort to other rules of construction. *Lockshin*, 412 Md. at 275. However, we do not analyze statutory language in a vacuum. *Matter of Collins*, 468 Md. 672, 689-90 (2020). "Rather, statutory language 'must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" *Id.* (quoting *Lockshin*, 412 Md. at 276).

"Where the statutory language is subject to more than one reasonable interpretation, or its meaning is not clear when considered in conjunction with other statutory provisions, we may glean the legislative intent from external sources." *In re R.S.*, 470 Md. 380, 403 (2020) (internal quotation marks and citation omitted). "Whether the statutory language is clear or ambiguous, it is useful to review the legislative history of the statute to confirm that interpretation and to eliminate another version of the legislative intent alleged to be latent in the language." *Id.* (cleaned up).

We presume that the General Assembly intends its enactments to operate "as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Lockshin*, 412 Md. at 276. "[C]onsideration of the consequences of alternative interpretations of the statute grounds the analysis." *In re O.P*., 470 Md. 225, 255 (2020). In each case, we must give the statute in question a reasonable interpretation, "not one that is absurd, illogical, or incompatible with common sense." *Lockshin,* 412 Md. at 276.

> a. *Respondents Did Not Have the Right to Charge Post-Judgment Interest at a Rate in Excess of the Legal Rate of 6%.*

Petitioners first contend that Respondents did not possess the right to charge post-judgment interest at a rate of 10%, which exceeds the maximum legal rate by 4% under *Ben-Davies*, 475 Md. at 275. According to Petitioners, *Ben-Davies* establishes that Respondents caused the writs of garnishment to include an unauthorized charge, in violation of CL § 14-202(8). Respondents cannot and do not dispute that, under *Ben-Davies*, they collected excess post-judgment interest, but rather argue that *Ben-Davies* does not render their conduct actionable under the MCDCA. According to Respondents, the intent of the MCDCA is to address prohibited "methods" of debt collection, not to provide a mechanism for challenging the amount of the debt. Thus, Respondents argue, Petitioners' claim concerning post-judgment interest is an impermissible attempt to contest the amount of a debt, rather than a permissible challenge to a method of collection. We agree with Petitioners.

17

Petitioners and Respondents both rely upon *Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575 (2014), and *Mills v. Galyn Manor Homeowner's Ass'n*, 239 Md. App. at 663, to support their arguments. Both of these cases discussed *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012), a case in which the federal district court drew the distinction between "methods" and "amounts" that the Court of Special Appeals invoked in this case and upon which Respondents rely in urging affirmance. We shall discuss *Fontell*, *Allstate*, and *Mills* in turn.

In *Fontell*, the plaintiff sued her homeowner's association (HOA) and others in federal court, asserting claims under the FDCPA, the MCDCA, the MCPA, and other statutes. As to the MCDCA, the plaintiff challenged the validity of her underlying debt to the HOA. According to the plaintiff, the defendants' collection activities violated § 14-202(8) because the assessment the defendants attempted to collect from her had already been paid in full by her condominium association (a different entity than the HOA), and thus the assessment against the plaintiff was not valid. *Fontell*, 870 F. Supp. 2d at 405.

The federal district court ruled that the plaintiff's MCDCA claim was not viable. The court reasoned that § 14-202 "is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Id.* The court further explained that the MCDCA "proscribes certain *conduct*, (1) through (9), by a collector in 'collecting or attempting to collect an *alleged debt*….' In other words, the [MCDCA] focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid." *Id.* (first emphasis in the original; second emphasis added by the court). Specifically as to § 14-202(8), the court opined that the prohibition on

18

claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist only "makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain *methods* of debt collection rather than the debt itself." *Id.* The court found further support for its interpretation of § 14-202(8) by "considering that the other eight practices proscribed by the statute refer to specific coercive or abusive methods of enforcing a debt." *Id.* According to the court, § 14-202(8) "makes sense within the context of the other proscribed practices only if it is also read to proscribe certain methods of debt collection, such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt, rather than collection of the debt itself." *Id.* at 406 (internal quotation marks and citation omitted). Because the plaintiff challenged the validity of her underlying debt, the court denied the plaintiff's motion to reconsider the court's prior grant of summary judgment to the defendants on the MCDCA claim. *See id.* at 402, 405-06.

In *Allstate*, a vehicle repair shop placed a "garageman's lien" upon a vehicle it had repaired and included a $1,000 processing fee in the lien amount. 219 Md. App. at 577. The vehicle owner claimed that the processing fee was not authorized by statute and, therefore, its inclusion in the lien was a violation of the MCDCA. *Id.* The repair shop contended it had the right to include the processing fee in the lien and cited *Fontell* for the proposition that the MCDCA "addresses the method of debt collection, as opposed to a challenge to the amount of the underlying debt." *Id.* at 590-91.

The Court of Special Appeals first analyzed and interpreted the "garageman's lien" statutory scheme and concluded that Title 16 of the Commercial Law Article and the plain

language of CL § 16-202(c) do not authorize "cost of process" fees to be included in a "garageman's lien." *Id.* at 589-90. Because the repair shop was not statutorily authorized to include the processing fee in the lien, the intermediate appellate court rejected the repair shop's argument that the vehicle owner was challenging the amount of the underlying debt. *Id.* at 591. Unlike the plaintiff in *Fontell*, the vehicle owner never "disputed that he owed the underlying debt." *Id.* Instead, the vehicle owner challenged "the method of collecting the debt, i.e., ... including [processing] fees as part of the lien." *Id.* Thus, distinguishing *Fontell*, the court held that the repair shop "did not have a right to include processing fees in the lien" and affirmed the jury's verdict that the repair shop violated the MCDCA by including the processing fees in the lien. *Id.*

In *Mills*, the Court of Special Appeals relied upon *Allstate* to reach the same conclusion regarding the filing of liens by an HOA after the expiration of the statute of limitations and the alleged imposition of fines not authorized by the HOA's governing documents. 239 Md. App. at 678-81. The HOA, like the repair shop in *Allstate*, contended that the MCDCA claim of the homeowners failed because the plaintiffs challenged the validity of the underlying debt instead of a method of debt collection. *Id.* at 679.

The intermediate appellate court examined *Allstate* and concluded that the homeowners' MCDCA claim was sufficiently similar to the MCDCA claim concerning the processing fee in *Allstate* to warrant the same result. *Id.* The court reasoned that the challenge to the validity of the right to file liens after the passage of the relevant statute of limitations was a contest of the HOA's methods of collection rather than a dispute about the validity of the underlying debt. *Id.* The court examined and cited *Barr* favorably in

20

support of its analysis with emphasis on the *Barr* Court's observation that an MCDCA claim survives dismissal when the complainant claims "that the amounts [the debt collector] sought to collect exceed[ed] the amount owed as a result of the debt collector's inclusion of an unauthorized charge."[10] *Id.* at 678-79 (quoting *Barr*, 303 F. Supp. 3d at 420). Therefore, the court vacated the circuit court's grant of summary judgment on the MCDCA claim, remanded the case, and directed the circuit court "to determine, in light of [*Allstate*] and *Barr*, whether there is any dispute of material fact as to whether [the HOA] had the right to collect each debt, and if not, whether [the HOA] knew that it did not have such right." *Id.* at 679-80.

In this case, however, the Court of Special Appeals reached a different result than it did in *Allstate* and *Mills*. The intermediate appellate court, after analyzing its decisions in *Allstate* and *Mills*, determined that the dispute over Respondents' collection of post-judgment interest in excess of the legal rate was distinguishable from the collection of an

---

[10] In *Barr,* the United States District Court for the District of Maryland examined and interpreted CL § 14-202(8) to assess what a complainant needs to establish to prevail on an MCDCA claim. In *Barr*, the complainants alleged that the defendant violated § 14-202(8) by sending notices claiming the Barrs "owe[d] more than is actually due and which [did] not give [the Barrs] credit for the sums paid," despite the Barrs making payments in accordance with the terms of a revised loan modification agreement. 303 F. Supp. 3d at 420. The federal district court stated that a party can succeed on an MCDCA claim by demonstrating the debt collector "acted with knowledge as to the invalidity of the debt." *Id.* (internal quotation marks and citation omitted). Further, the federal district court, citing *Allstate*, observed that the validity of a debt may become disputed if a debt collector seeks to collect an amount that exceeds the amount owed "as a result of the debt collector's inclusion of an unauthorized charge." *Id.* The federal district court dismissed the MCDCA count in *Barr* because the complainants neither disputed the validity of the underlying debt nor claimed that the alleged excess charges were the "result of the debt collector's inclusion of an unauthorized charge." *Id.*

21

unauthorized processing fee through a lien in *Allstate*, 219 Md. App. at 590-91, and the filing of liens after the passage of the relevant statute of limitations and collection of fines not authorized by an HOA's governing documents in *Mills*, 239 Md. App. at 678-80. *Chavis*, 246 Md. App. at 530. The Court of Special Appeals deemed it critical to the holdings in *Allstate* and *Mills* that the creditors in those cases pursued the collection of fees "that it did not have the *right* to collect." *Id.* (emphasis in original). The intermediate appellate court further reasoned that neither *Allstate* nor *Mills* "suggests that a debtor may use the MCDCA to challenge the *amount* of a debt, which the creditor had a *right* to collect." *Id.* (emphasis in original). In the court's view, what mattered was that Respondents were entitled by law to charge some amount of post-judgment interest; Petitioners' challenge to the 10% post-judgment rate, therefore, contested the amount of the debt owed by Petitioners rather than Respondents' method of debt collection. *Id.* Accordingly, the Court of Special Appeals affirmed the dismissals of Petitioners' MCDCA (and MCPA) claims. *Id.*

We disagree with the Court of Special Appeals' and the federal court's distinction between "methods" of debt collection and "amounts" of debts sought to be collected, when assessing a claim under CL § 14-202(8). Neither § 14-202(8) nor the prefatory language in § 14-202 contains the word "method." Rather, the statute prohibits a debt collector from engaging in certain conduct when "collecting or attempting to collect an alleged debt." The broad reach of the statute is indicated by the use of the phrase "alleged debt" – the conduct proscribed by the statute could concern both valid debts and invalid ones. Although it is

not inaccurate to say that § 14-202 deals with methods of debt collection,[11] it is more accurate to describe the statute as regulating the conduct of a person while engaged in debt collection. For example, the statute sets restrictions on the time and manner in which a debt collector communicates with a debtor, the other individuals whom the debt collector may contact about the debt, and the kind of statements a collector may make in those communications. Moreover, the type of conduct addressed in § 14-202(8) differs from the conduct proscribed in the other subsections. Unlike the other subsections, § 14-202(8) speaks to "right[s]" claimed by a debt collector, as opposed to the types of communications or disclosures a collector may use in the course of collecting or attempting to collect a debt. In other words, § 14-202(8) gets at the substance of a claimed right, while the other subsections are more concerned about matters of process.

In short, nothing in the MCDCA generally, or in § 14-202 specifically, warrants an interpretation of § 14-202(8) that limits its applicability to "methods" of debt collection. To the contrary, the remedial nature of the MCDCA requires that we interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist. *See Andrews & Lawrence Prof'l Servs.*, 467 Md. at 162; *see also Washington Home Remodelers, Inc. v. State*, 426 Md. 613, 630 (2012) (as to the MCPA). Thus, we hold that a plaintiff may invoke § 14-202(8) when the amount claimed by the

---

[11] Subsection 14-202(9) prohibits use of a communication that simulates legal or judicial process from a government agency, which might be regarded a "method" for collecting a debt.

23

debt collector includes sums that the debt collector, to its knowledge, does not have the right to collect.[12]

The application of this rule to these cases is straightforward. In *Ben-Davies*, this Court held that "where a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes unpaid rent and other expenses, a post-judgment interest rate of 6% applies pursuant to CJ § 11-107(b)." 457 Md. at 275. Thus, there is no dispute that the legal rate of post-judgment interest applicable to the request for writs of garnishment at issue in these cases is 6%. Nor did the judgments issued by the District Court of Maryland in the underlying breach of contract cases otherwise provide Respondents with the right to charge post-judgment interest at a rate of 10%. When the District Court of Maryland granted the judgments against Petitioners in the underlying cases, the District Court ordered post-judgment interest at the "*legal rate*." (Emphasis added). *See also* Md. Rule 3-604 (post-judgment interest on a money judgment "shall bear interest at the rate prescribed by law from the date of entry"). Again, that legal rate is 6%.

---

[12] The *Fontell* Court's interpretation of CL § 14-202(8) likely derived from *Spencer*, 81 F. Supp. 2d at 594, in which the federal district court stated generally that the MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." It is not clear that the *Spencer* Court intended to interpret § 14-202(8) to extend only to "methods" and to exclude instances where the amount claimed by the creditor includes charges that the creditor knows it does not have the right to claim. In any event, as we have explained, we decline to accept the distinction that some courts have made between "methods" of debt collection and "amounts" sought to be collected.

In sum, Respondents had no right to collect or attempt to collect post-judgment interest at a rate of 10% because such conduct was not authorized by law and it contravened the District Court's orders of judgment that post-judgment interest be collected at the "legal rate." It follows that Petitioners sufficiently pled facts alleging the first element of a cause of action under CL § 14-202(8), *i.e.*, that Respondents claimed a right to a rate of post-judgment interest that does not exist.[13] However, for Respondents' conduct to violate § 14-202(8), Petitioners must also establish that Respondents made that claim "with knowledge that the right does not exist." CL § 14-202(8). We now turn our attention to whether the complaints adequately alleged that Respondents acted with such knowledge.

> ### b. Petitioners Have Sufficiently Alleged the Knowledge Element of a Claim Under CL § 14-202(8).

Respondents argued before the Court of Special Appeals that they could not be liable under § 14-202(8) because Petitioners could not possibly prove the knowledge element of the cause of action. In affirming the dismissals of the MCDCA claims, the Court of Special Appeals relied on the methods/amounts distinction that we have disapproved above; the court did not substantively analyze Respondents' alternate ground for affirmance based on the knowledge element.

---

[13] Our holding in no way means that a judgment debtor may relitigate the validity of a judgment through an MCDCA claim. Once a creditor obtains a judgment in the District Court or a circuit court, the judgment creditor has a right to collect from the judgment debtor under the terms of that judgment (consistent with the applicable statute of limitations and barring the judgment being overturned or set aside). In the post-judgment context, it is only where a judgment creditor attempts to collect an amount not authorized by the judgment or otherwise claims, attempts, or threatens to enforce a right that does not exist, that a cause of action under CL § 14-202(8) may lie.

25

Before us, Respondents make the knowledge element the centerpiece of their argument. They contend that, as a matter of law, Petitioners cannot establish that Respondents claimed the right to post-judgment interest at a rate of 10% with knowledge that the right does not exist. According to Respondents, at the time they claimed the right to post-judgment interest at a rate of 10%, "the question of what was the proper rate in these circumstances was an undecided area of the law." As such, Respondents argue, they "indisputably could not have been asserting a claim with knowledge that they did not have the right to assert that claim, as required by the plain language of the statute."

For their part, Petitioners contend that a creditor has sufficient knowledge for purposes of § 14-202(8) "whenever the collector acts in violation of Maryland law because collectors are held to be aware of laws affecting the validity of their collection efforts." According to Petitioners, because Respondents had actual knowledge of all laws affecting the validity of their collection efforts, including the 6% post-judgment interest rate set forth in CJ § 11-107(b), Respondents are necessarily liable under CL § 14-202(8) for their mistake of law.

Thus, both sides argue that, as a matter of law, they prevail on the question whether Respondents had the requisite knowledge under § 14-202(8). However, they both overlook that we are concerned here with the pleading stage of an MCDCA claim. As explained below, Petitioners sufficiently pled the knowledge element in their complaints. Thus, the circuit courts erred in dismissing the claims. However, we disagree with Petitioners' position that actual knowledge of the nonexistence of a claimed right may be presumed.

26

To the contrary, it remains to be seen whether Petitioners will be able to prove that Respondents possessed the requisite mental state to be liable under § 14-202(8).

Federal courts in Maryland have interpreted the "knowledge" element of a claim under § 14-202(8) to require proof that a debt collector claimed, attempted, or threatened to enforce the non-existent right "with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Fontell*, 870 F. Supp. 2d at 407 (internal quotation marks and citations omitted); *see also Spencer*, 81 F. Supp. 2d at 595; *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004); *Bradshaw*, 765 F. Supp. 2d at 732; *Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013).

We agree. As the *Spencer* Court explained, "[t]his standard comports with the level of knowledge required for the similar common law actions of fraud … and defamation" under Maryland law, "and also squares with caselaw holding that punitive damages are not available for violations of the [MCDCA]"; it "would be incongruous to require a level of knowledge associated with punitive damages when the statute does not allow them." 81 F. Supp. 2d at 595. Thus, the question we must decide is whether Petitioners have sufficiently alleged actual knowledge or recklessness. We answer that question in the affirmative.

*Spencer*, decided in 1999, is instructive. There, the federal district court explained that a debt collector cannot escape liability under the MCDCA merely by claiming that it was mistaken about the law that applied to its collection efforts:

> Considering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term "knowledge" in the [MCDCA] does not immunize debt collectors from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. *See Hopkins v.*

27

*State*, 193 Md. 489, 498, 69 A.2d 456, 460 (1949). Moreover, in the context of consumer protection, "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir.1996) (citing *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393, 85 S. Ct. 1035, 13 L.Ed.2d 904 (1965)). Professional debt collectors and their attorneys, therefore, must be held to be aware of laws affecting the validity of their collection efforts. *Cf. Golt v. Phillips*, 308 Md. 1, 10, 517 A.2d 328, 332 (1986) (applying similar rule to landlords in consumer protection context).

*Id.* at 594-95.

However, the court denied the plaintiff's motion for summary judgment, reasoning that, in contrast to the FDCPA, the MCDCA "is not a strict liability statute. It requires the plaintiff to demonstrate that the collector had 'knowledge' that the claims it asserted did not exist." *Id.* at 595. The court explained that, at trial, the plaintiff would "have the opportunity to prove that the Defendants either had actual knowledge that their asserted claims were invalid or acted with reckless disregard as to the validity of the claims." *Id.* (footnote omitted).

We agree with *Spencer*'s interpretation of CL § 14-202(8), which sheds light on the flaws in both Petitioners' and Respondents' arguments.

*Spencer* correctly stated that, unlike the FDCPA, § 14-202(8) is not a strict liability statute. 81 F. Supp. 2d at 595.[14] When a statutory cause of action makes actual knowledge

---

[14] The FDCPA, 15 U.S.C. § 1692e, proscribes conduct similar to that covered in CL § 14-202. However, none of the subsections of § 1692e contains a "knowledge" element similar to that of CL § 14-202(8). Federal courts have held that § 1692e is a strict liability provision. *See, e.g.*, *Clark v. Capital Credit & Collections Services, Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006). The FDCPA's substantive provisions have now been incorporated into the MCDCA. *See* CL § 14-202(11).

(and/or recklessness) an element of the claim, as § 14-202(8) does, it is plain that it does not create strict liability (*i.e.*, liability regardless of the defendant's knowledge or intent in committing the alleged tortious act). Conversely, when a legislature chooses to make a tortfeasor strictly liable, it omits any reference to a necessary mental state. *See, e.g.*, FDCPA, 15 U.S.C. § 1692e; Md. Code Ann., Nat. Res. § 4-1118.1 (2018 Repl. Vol.) (providing that, subject to the exceptions described in the statute, "a person may not destroy, damage, or injure any oyster bar, reef, rock, or other area located on a natural oyster bar in the Chesapeake Bay that is not a leased oyster bottom" and further providing that "[a]ny person who destroys, damages, or injures any oyster bar, reef, rock, or other area referred to in subsection (a) of this section is liable to the State in a civil action, as the Department considers appropriate, for the restoration of, mitigation of, or monetary damages for any destruction, damage, or injury that the person causes to resources on the natural oyster bar").[15] Or the legislature expressly states that it is creating strict liability. *E.g.*, Nat. Res. § 5-1703 ("Any person who drills for oil or gas on the lands or in the waters of the State is strictly liable for any damages that occur in exploration, drilling, or producing operations or in the plugging of the person's oil or gas wells, including liability to the State for any environmental damage.").

---

[15] A federal appellate court has stated that Nat. Res. § 4-1118.1 imposes strict liability for damage to an oyster bar. *See State Dep't of Nat. Res. v. Kellum*, 51 F.3d 1220, 1225, 1228 (4th Cir. 1995).

Despite statutory language that is inconsistent with the intent to create strict liability, Petitioners argue § 14-202(8) does indeed create such strict liability. In support of their argument, they refer to the passage in *Spencer* where the court states that

> the term "knowledge" in the [MCDCA] does not immunize debt collectors from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. Moreover, in the context of consumer protection, it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line. Professional debt collectors and their attorneys, therefore, must be held to be aware of laws affecting the validity of their collection efforts.

*Spencer*, 81 F. Supp. 2d at 594-95 (cleaned up). From this, Petitioners argue that Respondents "had actual knowledge of all laws affecting the validity of their collection efforts," which means that "[a] knowing violation exists even if [Respondents] were mistaken about those laws."

We disagree with Petitioners' reading of *Spencer* on this point. When the court in *Spencer* stated that § 14-202(8) "does not immunize debt collectors from liability for mistakes of law" and that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line," the court was providing the rationale for its interpretation of "knowledge" in § 14-202(8) as including not just actual knowledge, but also recklessness. Viewed in this context, the court's statement in the following sentence that debt collectors "must be held to be aware of laws affecting the validity of their collection efforts" means that, where the law *is* settled at the time a collector takes a contrary position in claiming a right, the

30

collector's recklessness in failing to discover the contrary authority is equivalent to "aware[ness]" (*i.e.*, actual knowledge) of the authority.

But this point does not apply to the situation where the law is unsettled at the time the collector claims a right that later turns out not to exist. In such an instance, to withstand summary judgment and eventually prevail at trial, a plaintiff must produce facts from which the trier of fact reasonably may infer that the defendant acted recklessly in claiming the right. As we explain further below, depending on the particular circumstances of a case, a debt collector's claim of a nonexistent right in an unsettled area of the law may or may not be reckless. Thus, it is not sufficient in this context for a plaintiff to rely on the maxim that "ignorance of the law is no excuse" as a proxy for proving the mental state required by § 14-202(8). *See Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 360 (2016) ("'Ignorance of the law is no excuse' may be an apt rationale when applied to a murderer ignorant of the degrees of homicide, a fraudster whose scheme unintentionally falls within range of the theft statute, or a towed motorist who neglects to read a street sign before parking. It seems less compelling when applied to a payment required by a law that is murky in its coverage or complex in its computation.").

The legislative history of the MCDCA supports the view that § 14-202(8) does not create strict liability. Section 14-202 was first enacted in 1972, after passage of Senate Bill 706 ("S.B. 706").[16] The bill was based on Uniform Consumer Credit Code ("UCCC")

---

[16] S.B. 706 was originally codified as § 167 in Article 83 of the 1957 Annotated Code of Maryland. 1972 Md. Laws, ch. 682, § 1. In 1975, the General Assembly repealed

31

§ 5-108 ("Unconscionable Debt Collection"). The first draft of the provision that became § 14-202(8) included the UCCC's *mens rea* formulation, which prohibits "threatening or attempting to enforce a right *with knowledge or reason to know* that the right does not exist." (Emphasis added.) However, the bill was subsequently amended to remove the phrase "or reason to know," leaving "with knowledge" as the *mens rea* language in the enacted statute. *See* 1972 Md. Laws, ch. 682. "Reason to know" denotes negligence. *See, e.g.*, *Jones v. Mid-Atlantic Funding Co.*, 362 Md. 661, 677-78 (2001). Thus, the General Assembly rejected the negligence standard contained in the UCCC in favor of a standard that requires a showing of actual knowledge or recklessness. It follows that the General Assembly could not have intended strict liability to apply to every debt collector that claims a non-existent legal right as a result of a mistake of law.[17]

---

Article 83 and incorporated § 167 into Title 14 of the Commercial Law Article of the Maryland Code. See 1975 Md. Laws, ch. 49, § 3.

[17] Petitioners claim that interpreting § 14-202(8) to forestall a finding of liability based on a non-reckless mistake of law would allow a "debt collecting law firm [to] claim the defense by presenting a self-serving, after the fact, affidavit[.]" This concern seems overblown. A law firm's mere assertion after the fact that it acted in good faith should not suffice at the summary judgment stage to overcome an inference that it acted recklessly by claiming a right in circumstances where a reasonably competent law firm would have determined that the right did not exist.

Petitioners also assert that such an interpretation would "create different liability standards for non-attorney debt collectors and law firms engaged in debt collection," contrary to this Court's recent decision in *Andrews & Lawrence Professional Services*. In that case, we held that "[u]nder the MCDCA, there is no professional services exemption for lawyers" and therefore "[i]t would be illogical to ascribe to the Legislature an intent to permit law firms acting as debt collection agencies to make harassing debt collection phone calls, or to send debt collection letters knowingly claiming rights that do not exist, while prohibiting all other collection agencies from engaging in the same conduct." *Andrews &*

However, contrary to Respondents' position, *Spencer* correctly recognizes that a debt collector does not escape liability under § 14-202(8) whenever, in the absence of controlling authority, the collector makes a mistake of law. Respondents' argument fails to recognize that whether a defendant acted recklessly is a question of fact. Thus, in every case where the law was unsettled when the debt collector claimed a right that later turned out not to exist, the debt collector's liability under CL § 14-202(8) will depend on all the facts the parties enter in evidence. We expect that, in some cases, at the end of discovery there will be no genuine dispute of fact concerning the defendant's recklessness (or lack thereof) in claiming a right, and one party or the other will be entitled to summary judgment. In other cases, the jury will have to decide whether the plaintiff has proved the defendant had the requisite mental state.

The distinction that § 14-202(8) draws between a non-reckless mistake as to a claimed right on the one hand, and reckless disregard of the nonexistence of a claimed right on the other, is crucial. It is consistent with our opinion in *Andrews & Lawrence Professional Services*, in which we explained that "it is both possible, and indeed a requirement of the law, for a lawyer to zealously represent his client's interests and to also comply with the minimum standards established by the debt collection requirements of …

---

*Lawrence Prof'l Services*, 467 Md. at 154. Petitioners' reliance on *Andrews & Lawrence Professional Services* is misplaced. Our interpretation of § 14-202(8) does not create different standards for non-attorney debt collectors and attorney debt collectors. Rather, we give effect to the General Assembly's intent to require proof, at least, of recklessness on the part of *all debt collectors*. This is a unitary standard. To be sure, application of this standard will result in different outcomes, depending on the facts and circumstances of each case. But those outcomes will not be foreordained based on whether the defendant is an attorney or a non-attorney.

the MCDCA." 467 Md. at 160. It also comports with Maryland Rule 1-341's similar distinction between advocacy with substantial justification on the one hand, and advocacy in bad faith or without substantial justification on the other, and the Rule's authorization of sanctions for the latter type of conduct.[18] Further, the distinction is consistent with the Maryland Attorneys' Rules of Professional Conduct, which recognize that an attorney-advocate "has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." Md. Rule 19-303.1, Comment [1].

We are mindful that "the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change." *Id.* Thus, we agree with the view expressed by the Maryland State Bar Association (the "MSBA") that we should avoid

> an interpretation of the MCDCA that would chill legitimate legal advocacy and interfere with the attorney-client relationship. Advocacy can be legitimate even when unsuccessful, and even when "the attorney believes that the client's position ultimately will not prevail." Md. Rule 19-303.1, *Comment [2]*. Advocacy crosses the line only when "the attorney is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." *Id.*; *see URS Corp. v. Fort Myer Constr. Corp.*, 452 Md. 48, 72–73 (2017) ("fairly debatable" legal position not subject to sanction under Rule 1-341).

---

[18] Rule 1-341 provides: "In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it."

*Amicus Curiae* Brief of the MSBA at 6-7. However, to the extent the MSBA contends that an attorney can never be liable for claiming, attempting, or threatening to enforce a right where the law is unsettled as to the existence of that right, we disagree. The General Assembly undoubtedly knows that some "collectors," as defined in the MCDCA,[19] are attorneys. Yet it has not exempted attorney collectors from the requirements and prohibitions of the MCDCA. *See Andrews & Lawrence Prof'l Servs.*, 467 Md. at 154. If, in the course of collecting or attempting to collect a debt, an attorney recklessly claims a right that turns out not to exist, the attorney – like any other debt collector – is liable under the MCDCA.

We are confident that, just as a possible award of sanctions under Maryland Rule 1-341 does not chill legitimate advocacy or undermine the attorney-client relationship, our interpretation of CL § 14-202(8) will not chill legitimate advocacy by attorney debt collectors or damage the attorney-client relationship between non-attorney collectors and legal counsel. An attorney acting in good faith (viewed objectively) occasionally will provide advice to a debt collector client that the client does not like, just as an attorney-advocate acting in good faith (viewed objectively) must occasionally refuse to make an argument the client wants to advance because there is not a substantial justification to do so. Walking this ethical tightrope is not easy. It is a challenge that Maryland attorneys face every day. We have every reason to believe that Maryland's debt collection bar is up to the task. In any event, CL § 14-202(8) does not require a showing of actual knowledge by

---

[19] CL § 14-201(b) (defining "collector" as a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction").

attorneys and recklessness as to non-attorneys. The recklessness standard applies to all debt collectors. If the General Assembly decides that attorneys should be treated differently than non-attorneys in this context, it may amend the MCDCA accordingly.[20]

Recognizing the distinction between non-reckless and reckless mistakes of law that the General Assembly has incorporated in § 14-202(8), and understanding that whether a debt collector acted recklessly presents a question of fact, we conclude that Petitioners have sufficiently alleged Respondents' requisite mental state in the operative complaints. In the Fourth Amended Complaint filed in *Moore v. Peak*, Petitioners alleged:

116. … Peak's debt collection counsel was advised on August 5, 2016, that Peak was attempting, or threatening to enforce a right to collect 10% post[-]judgment interest when only 6% was allowed to be collected and yet Peak persisted to collect an excessive amount of post[-]judgment interest.

117. Peak acted with reckless disregard as to the falsity of the existence of the right to collect 10% post[-]judgment interest because it failed to review the legislative history or otherwise investigate whether Maryland law authorized the collection of 10% interest on the judgments it had obtained against the Plaintiffs and the members of the class.

In the First Amended Complaint in *Chavis v. Blibaum*, Petitioners alleged, among other things:

4. … [W]hen in 1980 the General Assembly enacted Md. Code Ann., Cts. & Jud. Proc. § 11-106 and § 11-107, to increase post-judgment interest in some instances to 10%, the General Assembly specifically restated that "[t]he legal rate of interest on a money judgment for rent of residential premises shall be at the rate of 6% per annum on the amount of the judgment." *Id.*, § 11-107(b).

---

[20] Similarly, if the General Assembly wishes to impose strict liability on debt collectors who make non-reckless mistakes of law, it may amend § 14-202(8) to remove the "knowledge" element.

5. Most Maryland attorneys with debt collection practices have complied with this law and have collected only 6% pre-judgment interest and 6% post-judgment interest on money judgments for rent of residential premises.

6. For example, one law firm, operated by Robert Kilberg, Esq., has complied with the law and used 6% when calculating pre-judgment and post-judgment interest on judgments obtained on behalf of its landlord clients.

7. The Defendant took a different path and intentionally violated … Cts. & Jud. Proc. § 11-107(b) by using 10% when calculating … post-judgment interest on judgments obtained on behalf of its residential landlord tenants. This has resulted in thousands of judgment debtors paying excessive interest and being provided inaccurate information about the amounts actually owed on their judgments.

8. The Maryland Court of Appeals held, in *Amber Ben-Davies and Bryione Moore v. Blibaum & Associates, P.A.*, 457 Md. 228, 233 (2018) (alterations in original) (footnotes omitted):

> [T]hat, where a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes amounts for unpaid rent and other expenses, a post-judgment interest rate of 6% applies to the judgment pursuant to CJ § 11-107(b).

9. In its 47 page decision, the Court of Appeals repeatedly stated that it found *no* basis for Defendant's belief that it was entitled to collect post-judgment interest at a rate of 10%, as opposed to the legal rate of 6%, on judgments it had obtained against the former tenants of its residential landlord clients. The Court of Appeals stated that its decision was based upon what the "plain language" "unambiguously" and "unequivocally" stated based upon the "obvious purpose" of the statute. *Id.* at 268-69.

10. Concerning Defendant's attempts to justify its non-compliance with the law, the court stated: "[i]ndeed, we can fathom no rational explanation as to why, as [Blibaum] posits, the General Assembly would have intended for CJ § 11-107(b) to apply to actions in which a landlord seeks possession of the premises, but not actions for breach of contract between landlords and tenants." *Id.* at 269[].

37

Viewing these well-pleaded facts in the light most favorable to Petitioners, we conclude that Petitioners have adequately pled claims under the MCDCA (and under the MCPA for violations of the MCDCA) based on Respondents' charging post-judgment interest at a rate of 10% to defeat a motion to dismiss. *See, e.g.*, *Lloyd v. General Motors Corp.*, 397 Md. 108, 121-22 (2007) (observing that, "in determining whether a petitioner has alleged claims upon which relief can be granted, there is a big difference between that which is necessary to prove the commission of a tort and that which is necessary merely to allege its commission," and that when the latter is the issue, "the court's decision does not pass on the merits of the claims; it merely determines the plaintiff's right to bring the action") (cleaned up). It remains to be seen on remand whether Petitioners will be able to prove that Respondents claimed the nonexistent right to collect post-judgment interest at a rate of 10% with reckless disregard as to the falsity of their claim.

2. Respondents Cannot State a Claim Under CL § 14-202(8) Relating to the Collection of Filing Fees to Obtain the Writs of Garnishment.

In their complaints, Petitioners also allege that Respondents violated CL § 14-202(8) through the collection of post-judgment court costs, specifically the filing fees associated with obtaining writs of garnishment, by adding those filing fees to the amounts Respondents sought to collect through the garnishments. According to Petitioners, because the costs of the filing fees for the requests for writs of garnishment were not included in the costs "actually assessed in the cause," CL § 15-605(c), Respondents had no right to claim entitlement to collect those post-judgment costs. Therefore, Petitioners allege,

38

Respondents' inclusion of the filing fees in the requests for writ of garnishment violated CL § 14-202(8).

Respondents counter that the filing fees constitute costs incurred by Respondents during post-judgment collection proceedings and, thus, were automatically assessed by the Clerk of the Court against Petitioners in favor of Respondents as the prevailing party under Maryland Rule 3-603(a). Further, Respondents note that they requested the garnishments on the District Court's approved court form, as required by Maryland Rule 3-303(a), and that form directs the judgment creditor to include the costs to obtain the writ of garnishment in the total amount to be garnished.

The Court of Special Appeals agreed with Respondents on this point, *Chavis*, 246 Md. App. at 531-32, as do we. Unlike the parts of Petitioners' MCDCA claims based on the collection of post-judgment interest, Petitioners failed to state viable claims based on the inclusion of the costs of the filing fees in the requests for writs of garnishment because Respondents had the right to claim those costs.

"Unless otherwise provided by rule, law, or order of court, the prevailing party is entitled to the allowance of costs." Md. Rule 3-603(a); *see also Mattison v. Gelber*, 202 Md. App. 44, 58 (2011) (explaining that, "in the absence of an order to the contrary, the clerk is obligated to ascertain (assess) and add to a judgment in favor of the prevailing party, without request, those costs that the prevailing party had paid, or still owed, to the clerk or the sheriff" and "[i]f any party believes that the clerk has performed that task improperly, the party has the ability to file a motion and seek the court's review"); *Warren v. Board of Appeals*, 226 Md. 1, 10 (1961) ("In the absence of an order of court providing

39

otherwise, the rule is that 'the prevailing party shall be entitled to the allowance of court costs' in the lower court. The same is true with respect to the costs in the [Appellate] Court."); *Elkton Supply Co. v. Stubbiles*, 180 Md. 97, 99 (1941) (restating the "fixed rule, in reference to the payment of costs in cases tried in courts of law ...[,] that the costs invariably follow the verdict"). In order for the Clerk of the Court to issue a writ of garnishment, there is a filing fee of $10.00,[21] which is initially paid by the judgment creditor and then assessed by the Clerk of the Court against the judgment debtor. Payment of a filing fee to request a writ of garnishment is an allowable cost that, therefore, the Clerk should include in the amount to be garnished. It would make no sense to allow a prevailing party to recover court costs incurred prior to judgment, but not allow that same prevailing party to recover the cost of a filing fee necessary to enforce that judgment.

Thus, the applicable District Court form – DC-CV-065, titled "Request for Writ of Garnishment of Wages" – directs the judgment creditor to provide "the amount now due on the judgment" by separately listing amounts owed for specific items. One such item is "[t]otal costs, including this writ."[22] Similarly, the form to "Request a Writ for Garnishment

---

[21] "The filing fees and costs in a civil case are those prescribed by law subject to modification by law, rule, or administrative regulation." CJ § 7-301(c)(1). The District Court of Maryland publishes a schedule of filing fees for specific actions; the filing fee for a request for writ of garnishment of wages is listed on the schedule as $10. *See* District Court of Maryland Cost Schedule, Form DCA-109, available at https://perma.cc/55TC-DKQB.

[22] *See* District Court of Maryland Form DC-CV-065, available at https://perma.cc/VC2K-WS5Y.

of Property Other Than Wages" (Form DC-CV-060)[23] directs the judgment creditor to separately list the "[o]riginal amount of judgment (excluding costs and attorney's fees)" and, after subtracting "total credits," to add pre-judgment interest "[p]lus court costs due, *including this writ*," as well as post-judgment interest, "additional costs/fees awarded," and "attorney's fees awarded by the court." (Emphasis added.)

Maryland Rule 3-303(a) directs that "[a]s far as practicable, all pleadings shall be prepared on District Court forms prescribed by the Chief Judge of the District Court." The record before the motions courts established that Respondents used Form DC-CV-065 to request the writs of garnishment, and that, as directed on the form, they listed the amounts of "[t]otal costs, including this writ." We agree with the Court of Special Appeals that CL § 15-605(c) does not render the District Court's assessment of the cost to obtain the writ of garnishment – as provided in Form DC-CV-065 – contrary to law.

Section 15-605 governs the duties of a judgment creditor with respect to attachments of wages. Subsection (a) requires a judgment creditor to provide a monthly report to the employer/garnishee and judgment debtor that shows all payments that were credited to the judgment debtor's account during the preceding month. Subsection (b) directs that, within 15 days of the satisfaction of the judgment, interests, and costs, the judgment creditor shall notify the garnishee and the clerk of the court of such satisfaction. Subsection (c) provides that "all payments received by a judgment creditor shall be credited first against the accrued interest on the unpaid balance of the judgment, if any, second upon the principal amount

---

[23] *See* District Court of Maryland Form DC-CV-060, available at https://perma.cc/CKK2-42SN.

41

of the judgment, and third upon those attorney's fees and *costs actually assessed in the cause.*" (Emphasis added.) Under subsection (d), a court may set aside the judgment if a judgment creditor fails to comply with the obligations imposed in § 15-605.

Contrary to Petitioners' position, § 15-605(c) does not prohibit the inclusion of post-collection court costs in a writ of garnishment. Nothing in the plain language of § 15-605(c) suggests that the General Assembly intended to restrict the type of court costs that may be collected by a judgment creditor through a writ of garnishment. To the contrary, the phrase "costs actually assessed in the cause" is broad enough to include post-judgment court costs set forth in the writ of garnishment, given that such costs are assessed in the same "cause" that has been resolved through entry of the judgment. *See* Md. Rule 3-646 (providing that "a judgment creditor may obtain issuance of a writ of garnishment" by filing a request for such a writ "in the same action in which the judgment was obtained"). Although § 15-605(c) addresses the order in which a judgment creditor must apply payments it receives from a garnishee, we glean from its language that any costs which have been assessed in the "cause" (*i.e.*, the court case) – including the costs necessary to obtain the writ of garnishment – may be garnished, but any costs not awarded or assessed by the court may not be garnished.

For these reasons, we hold that Respondents, as a matter of law, had the right to include the filing fees for the requests for writs of garnishment in the amounts sought to be garnished. It follows that the inclusion of such post-judgment court costs on Form

42

DC-CV-065 cannot form the basis for a violation of CL § 14-202(8) (or the MCPA).[24]

Accordingly, on remand the allegations in the MCDCA and MCPA claims based on Respondents' inclusion of post-judgment court costs in the requests for writs of garnishment should be stricken.

### B. Petitioners May File a New Motion for Class Certification on Remand.

The parties have argued at length before us concerning the circuit court's denial of Petitioners' second motion for class certification in *Moore v. Peak*. Petitioners contend that the circuit court failed to comply with Maryland Rule 2-231 by denying the second motion without holding a hearing.[25] Respondents argue that the circuit court did not abuse its discretion in denying the second motion without a hearing. Given our disposition of the first question presented in these cases, we need not address Petitioners' claim of error concerning the denial of the second motion for class certification.

---

[24] Even if we assumed that CL § 15-605(c) precludes a judgment creditor from seeking to collect post-judgment court costs, Petitioners would not be able to state a viable claim that Respondents included the costs of the filing fees in their requests "with knowledge" that they lacked the right to do so. As explained above, the record before the motions courts made clear that Respondents submitted their requests for writs of garnishment on the District Court-approved form that directs judgment creditors to include "[t]otal court costs, including this writ." Thus, even if we were to conclude that the District Court form should be changed – which we do not – Petitioners would not be able to sufficiently plead the knowledge element with respect to this portion of their MCDCA (or corresponding MCPA) claims.

[25] Maryland Rule 2-231(d) provides: "On motion of any party or on the courts own initiative, the court shall determine by order as soon as practicable after commencement of the action whether it is to be maintained as a class action. A hearing shall be granted if requested by any party. The order shall include the court's findings and reasons for certifying or refusing to certify the action as a class action. The order may be conditional and may be altered or amended before the decision on the merits."

On May 14, 2018, Petitioners moved to certify a class of "all natural persons against whom Peak Management LLC obtained a judgment that was not satisfied prior to January 4, 2014 in a law suit brought in Maryland by Blibaum & Associates, LLC on behalf of Peak Management LLC." At the hearing on the motion for class certification, to account for the narrowing of the case to a sole claim for unjust enrichment, Petitioners orally modified their motion to narrow the proposed class to "all natural persons against whom Peak Management LLC obtained a judgment that was not satisfied prior to January 4, 2014 in a law suit brought in Maryland by Blibaum & Associates, LLC on behalf of Peak Management LLC *and who have since satisfied that judgment*."

The circuit court denied the initial motion for class certification in large part due to the application of Rule 2-231 to Petitioners' claim for unjust enrichment. In particular, the circuit court ruled that "unjust enrichment cannot be determined on a class wide basis" because individualized inquiries would need to be made to determine whether "any benefit was conferred and accepted, retained or even known to the Defendant."

The revival of Petitioners' MCDCA and MCPA claims changes the landscape of the *Moore* case significantly. Application of the Rule 2-231 factors to the MCDCA and MCPA claims, which claims do not depend on whether Petitioners have satisfied the judgments against them, conceivably could lead to a different result than the circuit court reached with respect to the unjust enrichment claim. For this reason, upon remand, Petitioners shall be permitted to file a new motion for class certification. *See Bergmann v. Bd. of Regents of Univ. Sys. of Maryland*, 167 Md. App. 237, 289 (2006) (after holding that a portion of the University of Maryland's tuition policy was unconstitutional, ordering a

44

remand to the circuit court to reconsider whether class certification was warranted). If Petitioners file a new motion for class certification, the circuit court shall deem it an initial motion for class certification under Rule 2-231, and shall grant a request for a hearing on the motion if any party requests such a hearing. *See* Md. Rule 2-231(d). We express no opinion concerning how the circuit court should rule on a new motion for class certification.[26]

## IV

### Conclusion

Petitioners have properly stated a claim under the MCDCA and the MCPA based on Respondents' collection of post-judgment interest at a rate of 10%, when in fact, the applicable legal rate was 6%. Accordingly, the circuit courts incorrectly granted Respondents' motions to dismiss the MCDCA and MCPA claims to the extent they are based on Respondents' collection of post-judgment interest at the higher rate. However, Respondents had the right to include the cost of the filing fees to obtain writs of garnishment in the amounts they sought to have garnished. Thus, on remand, to the extent the complaints allege violations of the MCDCA and the MCPA based on Respondents' inclusion of such post-judgment court costs in their requests for writs of garnishment, those allegations shall be stricken.

---

[26] After denying the motions for class certification, the circuit court in the *Moore* case resolved the unjust enrichment claims as to the named plaintiffs on cross-motions for summary judgment. Neither side has appealed those summary judgments. We will leave it to the circuit court on remand to determine how to proceed if Petitioners seek to amend their complaint to add an unjust enrichment claim on behalf of new class representatives.

On remand, Petitioners shall be permitted to file a new motion for class certification, which the circuit court shall deem an initial motion for class certification under Maryland Rule 2-231. If Petitioners file a new motion for class certification, the court shall grant any party's request for a hearing on that motion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASES TO THE CIRCUIT COURTS FOR BALTIMORE CITY AND BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**

Circuit Court for Baltimore County
Case No. 03-C-18-010602
Circuit Court for Baltimore City
Case No. 24-C-17-000033

Argued: March 5, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 30

<u>September Term, 2020</u>

LARRY S. CHAVIS, ET AL.

v.

BLIBAUM & ASSOCIATES, P.A.

BRYIONE K. MOORE, ET AL.

v.

PEAK MANAGEMENT LLC

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Dissenting Opinion by Getty, J.

_____

Filed: August 27, 2021

I respectfully dissent from the Majority's statutory interpretation of the Maryland Consumer Debt Collection Act ("MCDCA"). In reaching its decision the Majority deviates from this Court's fundamental rules of statutory construction, discounting the unambiguous plain language of the MCDCA and adopting an interpretation of this statute that was not intended by the General Assembly at the time it was enacted. Therefore, I would hold that the Court of Special Appeals correctly affirmed the Circuit Court for Baltimore County's and Circuit Court for Baltimore City's decision to dismiss Mr. Larry Chavis' and Ms. Bryione Moore's claims under the MCDCA.

As extensively discussed in the dissent to *Nationstar Mortgage LLC d/b/a Mr. Cooper, et al. v. Donna Kemp*, Md. Code (1975, 2013 Repl. Vol.), Com. Law ("CL") § 14-202 provides a cause of action for a plaintiff to recover for improper methods of debt collection—not the validity of the underlying debt. No. 43, slip op. at 33 (Md. Aug. 25, 2021) (6-1 decision) (Getty, J., dissenting). Mr. Chavis and Ms. Moore contend that Peak Management LLC's and Blibaum Associates, P.A.'s attempt to collect and collection of 10% post-judgment interest violates § 14-202(8) as a "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist[.]" CL § 14-202(8). But the text and structure of § 14-202 establish that the General Assembly only intended to prohibit certain methods of collection, not provide a cause of action to challenge the validity of an underlying debt. *Nationstar*, slip op. at 33-35 (Getty, J., dissenting). Mr. Chavis and Ms. Moore do not identify an improper method of collection in their claim—rather their challenge is based on the collection of an inaccurate post-judgment interest percentage.

The Majority's statutory interpretation unnecessarily broadens the scope of the MCDCA beyond the plain language and its intended meaning in holding that "it is more accurate to describe the statute as regulating the conduct of a person while engaged in debt collection." *Larry S. Chavis, et al. v. Blibaum & Associates, P.A.; Bryione K. Moore, et al. v. Peak Management LLC*, No. 30, slip op. at 23 (Md. Aug. 25, 2021). Accordingly, I would affirm the judgment of the Court of Special Appeals upholding the dismissal of Mr. Chavis' and Ms. Moore's MCDCA claims.